## CENTERMARK PROPERTIES, INC., Plaintiff–Respondent,

### v.

## The HOME INDEMNITY COMPANY, Defendant–Appellant.

### No. 66587.

Missouri Court of Appeals, Eastern District, Division Four.

March 14, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 12, 1995.

Application to Transfer Denied May 30, 1995.

Denis C. Burns, John B. Singleton, Godfrey, Vandover & Burns, Inc., St. Louis, for appellant.

Kathryn A. Dyer, Hayes, Newmark & Steigerwald, St. Louis, for respondent.

KAROHL, Judge.

Defendant, The Home Indemnity Company [Home Indemnity], appeals from a summary judgment in favor of Centermark Properties, Inc. [Centermark], plaintiff. In this declaratory judgment suit, the trial judge ruled Home Indemnity owes a duty to defend and indemnify Centermark in an auto collision, personal injury suit. We affirm.

The facts of this case are undisputed. Timothy Marti, a patrol officer for the St. Peters Police Department, has alleged injuries when his vehicle was struck by a vehicle owned by Centermark and driven by "third party" Eric Scales. Subsequently, Marti sued Centermark and a security officer employed by it for injuries sustained in a collision. In his petition, Marti alleged that the collision and his damages were caused by the negligence and carelessness of Centermark in the following respects:

(a) That Defendant failed to comply with set procedures for subduing and controlling third parties;

(b) That Defendant failed to follow set procedures and regulations regarding the control of one's own security vehicle;

(c) That Defendant failed to comply with the set procedures and regulations relating to the apprehension of persons suspected of criminal activity within the property patrolled by said Defendant security company;

(d) That Defendants failed to have adequate rules and regulations to govern subduing and controlling third parties;

(e) That Defendants failed to have adequate rules and regulations to govern the control of one's own security vehicle;

(f) That Defendants failed to have adequate rules and regulations to govern the apprehension of persons suspected of criminal activity within the property patrolled by said Defendant security company;

(g) That Defendant failed to have proper and adequate hiring practices for security officers;

(h) That Defendant failed to have proper and adequate training policies and programs for its security officers;

(i) That Defendant knew or by the exercise of the proper degree of care should have known that Defendant's actions would pose a threat to third persons in or about the area.

At the time of the collision, Centermark maintained two liability insurance policies. The first was a business auto policy issued by Aetna Casualty and Surety Company. The second was commercial general liability coverage issued by Home Indemnity. After it received the petition, Centermark requested Home Indemnity to provide a defense and protect it against any liability it may face in the suit, up to the policy limits. Home Indemnity refused. Centermark filed a petition for declaratory judgment against Home Indemnity in September 1993, requesting the court to declare that the commercial general liability policy issued by Home Indemnity

provides liability coverage for the automobile collision. In January 1994, Centermark filed its answer denying coverage, which was based on the following policy provisions:

COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

*Exclusions*

*This insurance does not apply:* ...

*(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of*

*(1) any automobile or aircraft owned or operated by or rented or loaned to any insured* ...

[Our emphasis.]

Home Indemnity also filed a third-party petition against Aetna Casualty and Surety Company for a declaratory judgment. It requested that in the event the trial court ruled the commercial general liability policy provided coverage for the accident, the court further find Aetna's business auto policy provides concurrent coverage and in addition declare whether said policies are primary/excess or should be pro-rated based on applicable policy limits.

In February 1994, Centermark filed a motion for summary judgment, which was granted. Home Indemnity presents one point in this appeal, which reads as follows:

The trial court erred in sustaining plaintiff's motion for summary judgment, determining that defendant Home Indemnity Company's comprehensive general liability insurance (CGL) policy provides liability coverage to plaintiff for bodily injury allegedly sustained by Timothy Marti in a motor vehicle collision which took place on March 20, 1989 in St. Charles County, for the reason that Home's policy contains a provision stating that: "This insurance does not apply ... to bodily injury or property damage arising out of the ownership, maintenance, operation, use ... of ... any automobile ... owned or operated by or rented or loaned to any insured, or ... any other automobile ... operated by any person in the course of his employment by any insured;" and the bodily injury allegedly sustained by Timothy Marti on March 20, 1989, arose out of the ownership or operation or use of an automobile owned or operated by or rented or loaned to plaintiff Centermark Properties, Inc.

When considering appeals from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371 (Mo. banc 1993). Our review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The propriety of summary judgment is purely an issue of law. Because the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.*

Disputes arising from interpretations and application of insurance contracts are matters of law for the court where there are no underlying facts in dispute. *Moore v. Commercial Union Insurance Co.,* 754 S.W.2d 16, 18 (Mo.App.1988). An insurance

contract is designed to furnish protection; therefore it will be interpreted to grant coverage rather than defeat it. *American Family Mutual Insurance Co. v. Turner*, 824 S.W.2d 19, 21 (Mo.App.1991). Exclusion clauses in insurance policies are to be strictly construed against the insurer. *Aetna Casualty & Surety Company v. Haas*, 422 S.W.2d 316, 321 (Mo.1968).

We find the case of *Braxton v. United States Fire Insurance Co.*, 651 S.W.2d 616 (Mo.App.1983), is controlling on the issue presented here. In *Braxton*, the plaintiff was shot by a gas station attendant. He sued the owner of the gas station on a theory of negligent supervision. The insurer of the gas station owner denied coverage on the basis of the following exclusion: "This insurance does not apply ... to bodily injury and property damage arising out of the ownership or use of any firearm." The court found coverage, based on ambiguity in the wording of the exclusionary clause:

> Because the language in the policy at issue was reasonably susceptible of two interpretations, the court was required to apply the construction most favorable to the insured and this is especially true when the clause in question attempts to limit or exclude coverage under the policy [citation omitted]. The exclusion at issue in this case does not unequivocally exclude acts arising out of the ownership or use of a firearm by *any* person under *any* circumstances. A reasonable person reading the exclusion in context could fairly conclude that the exclusion applied only if the insured himself owned or used a firearm in connection with his business, or if someone else used the firearm "for" him or "on his behalf." Here the insured did not own or use the firearm, nor was it used "for" him or "in his behalf." We find that the exclusion did not apply under these circumstances and it is clear that the trial court acted properly within the constraints as heretofore set out by applying a construction which favored the insured.

*Id.* at 619.

In *Braxton*, the plaintiff also argued that the trial court could have found coverage on the theory that the insured's negligent supervision was a separate and non-excluded cause of plaintiff's injuries. This is the theory that insured in the present case asserts. The court in *Braxton* stated, "Although no Missouri cases are precisely on point, it is widely accepted that where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable so long as one of the causes is covered by the policy." *Id.* at 619.

Here, Centermark does not assert coverage based on an ambiguity in the wording of the exclusionary clause. It claims coverage based on negligent supervision, hiring, and training, among other things. It is undisputed Scales was not an authorized driver by Centermark. However, we need not reach the issue of whether the wording of the exclusionary clause was meant to apply to the use or operation of a vehicle without permission or authorization of the insured. Instead, we find coverage based on the fact that there are allegations of negligence that appear independent of ownership, maintenance, operation, or use of an automobile— that is, that Centermark failed to comply with set procedures for apprehending, subduing, and controlling third parties and persons suspected of criminal activity and it failed to have proper and adequate hiring practices and training policies and programs for its security officers. This is consistent with *Braxton*, because while one proximate cause of the damage may have been the use of an automobile owned by Centermark, which was clearly excluded from coverage, a concurrent cause may have been Centermark's negligence in supervising and training employees, a covered risk. Under the principles enunciated in *Braxton*, Home Indemnity is obligated to defend and indemnify Centermark because one of the causes is covered by the policy.

Home Indemnity's reliance on *Shelter Mutual Insurance Co. v. Politte*, 663 S.W.2d 777 (Mo.App.1983), and *American States Insurance Co., Inc. v. Porterfield*, 844 S.W.2d 13 (Mo.App.W.D.1992), is misplaced. In *Politte*, insured owned the automobile and his son was driving when it was involved in an accident. Insured had a homeowner's insurance policy with insurer. Under the terms of the

policy, both insured and his son were "insureds" at the time of the accident. The policy stated, "This policy does not apply . . . to bodily injury . . . arising out of the ownership, maintenance, operation, use loading or unloading of: . . . any motor vehicle owned or operated by . . . any insured." The plaintiff, who was a passenger in the Polittes' vehicle at the time of the accident, filed a petition against insured, premising liability on his negligent entrustment of the motor vehicle. In holding that there was no coverage, the court stated,

> [The] injuries resulted from Winford Politte's entrusting his automobile to his son who operated that automobile. Because an essential element of the liability of the entrustor, Winford, is the concurrent negligence of the entrustee, Vernon, . . . the entrustor's liability necessarily "arises out of" the operation of the motor vehicle. This is the activity for which coverage is specifically excluded in the insurance policy.

*Politte,* 663 S.W.2d at 779.

Similarly, in *Porterfield,* plaintiffs were injured when a trailer became unhitched from Porterfield's truck and collided with the car in which they were traveling. Insured's employee was driving the truck. Plaintiffs alleged Porterfield negligently supervised his employees in the proper method of hitching the trailer to the truck. Porterfield had a commercial general liability policy with American States, which read in pertinent part, "This insurance does not apply to . . . '[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaded to any insured. Use includes operation in 'loading and unloading.' " A truck and trailer were defined in the policy as an "auto."

The trial court held that the policy did not insure Porterfield. He argued on appeal that negligent supervision of employees is a separate and concurrent act of negligence that does not fall within the automobile exclusion of the policy. For this contention, the insured relied on *Braxton.* In affirming denial of coverage, the court stated,

In this case, Porterfield procured insurance coverage for two distinct types of risks—those involving the use, ownership and maintenance of automobiles to be covered under his automobile liability policy and general business liability risks to be covered under his CGL [commercial general liability] policy. The CGL policy provided insurance coverage specifically for non-auto-related incidents. In *St. Paul Mercury Indemnity Co. v. Standard Accident Ins. Co.,* 216 Minn. 103, 11 N.W.2d 794, 797 (1943), the court noted that it is common practice among insurance companies and those obtaining insurance to divide coverage according to the risks involved. This is exactly what Porterfield has done in the case at bar. The court in St. Paul further noted that:

General and comprehensive liability policies are issued to cover all risks incident to [the] operation of a business, except those involved in the ownership, maintenance, operation, and use of automobiles. Because the ownership, maintenance, operation, and use of automobiles involves special and peculiar risks as an incident thereof, to which the general business of the insured is not subject, such risks are excluded from the general coverage and are covered as a special class by automobile liability policies. . . . *The line is drawn between risks incident to the general business and those incident to the automobile while being used to accomplish limited operations involved in such business.*

[Our emphasis.] *Porterfield,* 844 S.W.2d at 15. The court noted that "several jurisdictions, including Missouri, have held that acts such as negligent entrustment, negligent hiring, negligent supervision and training are merely incidental to the ownership, operation or use of the vehicles involved in the accident, and, therefore, are not covered because of exclusionary provisions similar to those in the CGL policy here." *Id.*

These cases differ significantly from the case at bar. In both *Politte* and *Porterfield,* there was no dispute that the drivers were permissive, because the drivers were using the vehicle for the benefit of the owners when the casualty occurred. In both cases the court found the injuries arose out of the

ownership or use of the automobile. The theories of negligent entrustment or negligent supervision were merely incidental to the permissive use of vehicles in a negligent manner in those cases. Therefore the exclusion applied and the insureds were not afforded coverage under a homeowner's policy or a commercial general liability policy.

Here, the ownership or use of an automobile is incidental, not an essential element of the negligence claim against insured. There is no claim of negligent entrustment, as in *Politte,* arising from permissive use of a vehicle, or negligent supervision of the driver, as in *Porterfield.* The alleged operator was a non-permissive driver. Plaintiff claims Centermark was negligent in employee supervision, hiring, and training, thereby resulting in an unauthorized third party's acquisition and use of the vehicle that injured plaintiff. On these facts, these allegations contain separate and non-excluded causes of defendant's injuries, apart from use or ownership of a vehicle. Thus, Home Indemnity is obligated to defend and indemnify Centermark in defense of the personal injury suit.

Affirmed.

AHRENS, P.J., and SIMON, J., concur.