Sandra K. CAWTHON,
Plaintiff/Garnishor,

v.

STATE FARM FIRE & CASUALTY
CO., Defendant/Garnishee.

No. 95–1167–CV–W–5.

United States District Court,
W.D. Missouri,
Western Division.

Feb. 11, 1997.

Joseph W. Amick, Joseph W. Amick, P.C., Kansas City, MO, for Sandra K. Cawthon.

James L. Sanders, Wallace, Saunders, Austin, Brown & Enochs, Chtd., Kansas City, MO, Derrick A. Pearce, Wallace, Saunders, Austin, Brown & Enochs, Chtd., Overland Park, KS, Gary M. Cupples, Kansas City, MO, for State Farm Fire & Cas. Co.

## ORDER

LAUGHREY, District Judge.

Pending before the Court is Garnishor/Plaintiff's Motion for Summary Judgment and Garnishee/Defendant's Motion for Summary Judgment. By agreement of the parties, this case was removed from the September Joint Civil Docket and submitted to me on the parties' cross-motions for summary judgment. I grant the Garnishor/ Plaintiff's Motion for Summary Judgment (Doc. # 32 ) and .deny the Garnishee/ Defendant's Motion for Summary Judgment (Doc. # 26).

## I. UNCONTROVERTED FACTS

On March 26, 1993, Jeffrey Cawthon ("Jeffrey") was fatally injured in the backyard of his grandfather, Thomas Michael Langton ("Langton"). Langton was trying to remove a tree limb which became embedded in the ground two days earlier when he cut down a big tree. Langton had devised a plan for the limb removal and asked his son, Robert Cawthon, to help. Langton tied a nylon rope to the trailer hitch of his pickup truck and instructed Robert to put the rope around a large, nearby tree. At Langton's direction, the rope was placed at a 90–degree angle to the tree and then attached to the embedded tree limbs. As Langton drove his pickup slowly forward, the first tree limb was dislodged and catapulted forward, striking Jeffrey in the stomach. Jeffrey died three to four hours later as a result of his injuries.

Jeffrey's mother, Sandra Cawthon, filed suit in state court against Langton to recover for the wrongful death of her son. In that action, she asserted that Langton was negligent in devising the plan to remove the tree, failing to warn Plaintiff and Jeffrey, failing to clear the area before pulling the tree branches from the ground, and failing to inspect the manner in which the tree branches were tied. Plaintiff specifically alleged that Langton was not negligent in the operation of the truck. Judgment was entered against Langton in the amount of $500,000 and Langton

was given credit for $25,000, the amount previously paid to Plaintiff by State Farm Mutual Insurance Company pursuant to Langton's automobile insurance policy.

At the time of the accident, Langton also had a homeowner's insurance policy with State Farm Fire & Casualty Company. That policy covers personal liability "because of bodily injury or property damage, to which this coverage applies, caused by an occurrence." An occurrence is defined as an accident which occurs during the policy period. In addition, that policy contains a provision excluding coverage for "[b]odily injury or property damage arising out of the ownership, maintenance, [or] use of a motor vehicle owned or operated by the insured." (Ex. 2, Sugg. in Supp. of Garnishor's Mot. for Summ. J.) It is my task to determine if this exclusion precludes Plaintiff from recovering her state court judgment from State Farm Fire & Casualty Company.

## II. SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). To defeat a properly supported summary judgment motion, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *See* Fed.R.Civ.P. 56(e). An issue is "genuine" only if the evidence is such that a reasonable juror could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir.1987). Where the nonmoving party bears the burden of proof, the burden upon that party is to "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Disputes arising from the interpretation and application of insurance contracts are matters of law and appropriate for court determination where there are no underlying facts in dispute. *Moore v. Commercial Union Ins. Co.*, 754 S.W.2d 16, 18 (Mo.App. 1988); *Centermark Properties, Inc. v. Home Indem. Co.*, 897 S.W.2d 98, 100 (Mo.App. 1995). The parties have agreed that there are no material facts in dispute and the sole question is whether the death of Jeffrey Cawthon arose out of the use of the insured's automobile.

## III. APPLICABLE LAW

■ Because this is a diversity case, the rule of decision is Missouri law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In Missouri, the burden of proof is on the insurer to show that an exclusion clause applies. *Arbeitman v. Monumental Life Ins. Co.*, 878 S.W.2d 915 (Mo. App.1994); *Am. Family Mut. Ins. Co. v. Brown*, 657 S.W.2d 273 (Mo.App.1983). Because insurance policies are designed to provide protection, they will be liberally interpreted to grant rather than deny coverage. *Am. Family Mut. Ins. Co. v. Turner*, 824 S.W.2d 19, 21 (Mo.App.1991). This also means that exclusion clauses are to be strictly construed against the insurer. *Universal Underwriters Ins. Co. v. Dean Johnson Ford, Inc.*, 905 S.W.2d 529 (Mo.App.1995); *Walters v. State Farm Mut. Auto. Ins. Co.*, 793 S.W.2d 217 (Mo.App.1990); *Aetna Cas. & Sur. Co. v. Haas*, 422 S.W.2d 316, 321 (Mo. 1968). The Missouri Supreme Court, however, has stated: "where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy." *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 142 (Mo. banc 1980). The Court has also noted that "[A] policy must be liberally construed in favor of the insured so as not to defeat, without a plain necessity, his claim to indemnity, which in making the insurance it was his object to secure; and that, when words are susceptible of two interpretations, that which will sustain insurance claim must be adopted, since the language employed in the policy is that of the insurer." *Schmidt v. Utilities Ins. Co.*, 353 Mo. 213, 182 S.W.2d 181, 183 (1944); *see also Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 813–14 (Mo. banc 1997); *Krombach v. May-*

*flower Ins. Co. Ltd.*, 827 S.W.2d 208 (Mo. banc 1992); *Robin v. Blue Cross Hosp. Servs., Inc.*, 637 S.W.2d 695, 698 (Mo. banc 1982); *Katz Drug Co. v. Commercial Standard Ins. Co.*, 647 S.W.2d 831 (Mo.App.1983). This does not mean that the court will create an ambiguity where none exists. *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991). "[W]here insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage." *Id.* at 382.

## IV. DISCUSSION AND ANALYSIS

The question in this case is whether the death of Jeffrey Cawthon arose out of the use of the motor vehicle operated by the insured. In *Schmidt*, a case involving an automobile insurance policy, the Missouri Supreme Court held that the "words 'arising out of ... use' are very broad, general, and comprehensive [and] ... are ordinarily understood to mean 'originating from' or 'having its origin in', 'growing out of' or 'flowing from'." *Schmidt*, 182 S.W.2d at 184. *See also Bituminous Cas. Corp. v. Aetna Life and Cas.*, 599 S.W.2d 516 (Mo.App.1980). While one Missouri court has found the term "use" and "arising out of" to be facially unambiguous, *Killian v. State Farm Fire & Cas.*, 903 S.W.2d 215 (Mo.App.1995), the proper application of this term to the myriad of legal and factual constructs in insurance disputes is anything but clear. *See Cameron Mut. Ins. Co. v. Ward*, 599 S.W.2d 13, 14–15 (Mo.App.1980). At one end of the factual spectrum is the automobile being operated on a public highway causing damage as a result of a collision with an object or a person. At the other end of the spectrum are injuries occurring adjacent to the vehicle or connected to it by the thinnest of evidentiary threads, *i.e.*, the vehicle was merely used to bring the participants to the place where liability occurred. The matter is further complicated because the term "use" is found in automobile insurance policies where vehicle use is a prerequisite for coverage, as well as in homeowner's insurance policies where vehicle use will preclude coverage. Missouri has not addressed this particular fact pattern in the context of a homeowner's policy, so my job is to predict how a Missouri court would resolve the dispute.

Plaintiff has two main arguments for why the vehicle exclusion clause of the homeowner's policy should not apply in this case. First, Plaintiff argues that the exclusion clause is not triggered unless the vehicle is being operated negligently. Because Plaintiff carefully plead her case to avoid alleging the negligent operation of the truck and because there is no evidence that Langton was negligent in the operation of his truck, Plaintiff states that the use of the truck cannot be the proximate cause of Jeffrey's death. Second, even if the Court finds that the use of the truck contributed to Jeffrey's death, the Court should also find that this use was concurrent with Langton's negligence in devising the plan to remove the tree and failing to clear the area. When concurrent acts cause injury, there will be insurance coverage if either act independently would have been covered.

Defendant's main argument is that the use of the truck did cause Jeffrey's death because it was a necessary component of Langton's plan for the removal of the tree. "The accident occurred because of the force exerted upon the tree branch by the pickup truck." (Sugg. in Supp. of Garnishee's Mot. for Summ. J. at 14.)

Both parties agree that Missouri law requires a causal connection between the injury and the vehicle before there is "use" under either a homeowner's or auto insurance policy. *Cameron*, 599 S.W.2d at 15; *State Farm v. Flanary*, 879 S.W.2d 720 (Mo.App.1994). *See also* ROBERT E. KEETON, ET AL., INSURANCE LAW, § 5.2 at 471 (1988). Both parties agree that an incidental, fortuitous or casual connection is insufficient. *Flanary*, 879 S.W.2d at 722. KEETON, ET AL., INSURANCE LAW, § 5.5d at 556, *et seq.* Plaintiff strongly argues that the causal connection required by Missouri law must be proximate.

Missouri cases give little consistent guidance on this question. In *Martin v. Cameron Mut. Ins. Co.*, 763 S.W.2d 710 (Mo.App. 1989), the court, interpreting an auto insurance policy, held that the connection between the injury and the use of the vehicle need not be proximate cause "in the strict legal sense

of causation permeating general tort law." *Id.* at 711. There must simply be some causal connection. *Flanary,* 879 S.W.2d at 722. In *Bituminous Cas. Corp.,* 599 S.W.2d at 519, the court held that the standard was whether the insured's control of a vehicle was the proximate cause of the accident, but then also cited the above language in *Martin.* Proximate cause was the implied standard in *Beauty Supplies, Inc. v. Hanover Ins. Co.,* 526 S.W.2d 75 (Mo.App.1975). Why the court chose that standard was not discussed. Several other jurisdictions have referred to proximate cause as the correct standard for determining whether there is a sufficiently close connection between the vehicle and injury. *CSX Transp. v. Continental Ins. Co.,* 343 Md. 216, 680 A.2d 1082, 1088 (App.1996); *Findlay v. United Pacific Ins. Co.,* 78 Wash. App. 17, 895 P.2d 32 (1995); *Nationwide Mut. Ins. Co. v. Davis,* 118 N.C.App. 494, 455 S.E.2d 892, 895 (1995); *State Capital Ins. v. Nationwide Mut. Ins. Co.,* 318 N.C. 534, 350 S.E.2d 66 (1986); *Oakley Transport, Inc. v. Zurich Ins. Co.,* 271 Ill.App.3d 716, 208 Ill. Dec. 177, 648 N.E.2d ·1099 (1995).

■ I agree that proximate cause is the standard to be applied when interpreting the term "use" in this policy.[1] My conclusion that a vehicle exclusion policy will only apply under Missouri law when the injury is proximately caused by a vehicle is only the first step. The real question is how close must the connection be for it to be labeled proximate. A summary of Missouri cases shows only the barest hint at the answer.

The relevant Missouri cases fall roughly into two categories. First, there are the auto insurance cases where vehicle use is a prerequisite to coverage. In these cases, the Missouri courts seem to deny coverage only when the auto is merely the site of the injury, *Cameron,* 599 S.W.2d at 18; or when the injury is separated from the use of the truck by time or distance, *Brown v. Shelter Mut. Ins. Co.,* 838 S.W.2d 148 (Mo.App.1992); *Flanary,* 879 S.W.2d at 722; *Martin,* 763 S.W.2d at 711.

When there is any plausible connection between the use of the vehicle and the injury, the courts have found insurance coverage. *State Farm Mut. Auto. Ins. Co. v. Whitehead,* 711 S.W.2d 198 (Mo.App.1986). In that case, a shootout occurred in a moving vehicle because the driver of the vehicle was attempting to transport a suspected burglar to jail. The court found coverage because the "shooting resulted because the car was being used to take [the burglar] where he preferred not to go." *Id.* at 201. In *Bituminous Cas. Co.,* 599 S.W.2d at 519, a bulldozer operator attempted to dislodge a pickup truck mired down in a landfill. In the pushing process, the driver of the pickup was struck by the bulldozer blade. The court found insurance coverage under the pickup truck's insurance because the bulldozer operator was "using" the pickup with the permission of its owner.

A second category of cases involves homeowner's insurance with a vehicle exclusion clause. Only one Missouri case has been cited by counsel which clearly fits into this category. In *Steelman v. Holford,* 765 S.W.2d 372 (Mo.App.1989), the court refused to find vehicular use so as to trigger an exclusion clause in a homeowner's policy. The claimant was the victim of a random shooting while operating his vehicle on a public highway. The court held that there was no causal connection between the operation of the truck and the victim's injury, because the vehicle was merely the situs of the injury.

The problem with all of these cases is that they are not factually analogous. Plaintiff, trying to show that there is coverage, cites *Flanary* where the court denies auto insurance coverage. Defendant, trying to show there is no coverage, emphasizes *Steelman,* where the court finds that there is homeowner's coverage. This odd pattern of advocacy illustrates the quandary. Will the Missouri courts, having interpreted the term "use" broadly in the context of an automobile insurance policy, necessarily interpret it in the same way in a homeowner's policy?

---

1. The defendant does not seem to disagree with the standard but disputes Plaintiff's application of this standard to the facts in this case. (Sugg. in Supp. of Garnishee's Mot. for Summ. J. at 7, concluding that the use of the truck was the proximate cause of Jeffrey's injuries.)

The majority rule in other jurisdictions seems to be that the term will be broadly interpreted in an auto policy to provide coverage but narrowly interpreted in a homeowner's policy, likewise to provide coverage. *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d at 70–71; JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE (Berdal ed.), § 4500. Appleman argues that the term should not be interpreted uniformly. He says: "The policyholder should be entitled to coverage under an automobile policy whenever liability settles upon him while he was using an insured automobile without regard to the manner or purpose of use." *Id.* at 176. A homeowner's liability policy, however, insures against an occurrence. "The court has a legitimate interest in determining whether the use of the automobile was the 'occurrence' which produced the liability." *Id.* at 177.

■ Rules of construction do not apply according to Missouri law unless the court finds a term to be ambiguous. *Am. Family Mut. Ins. Co. v. Ward*, 789 S.W.2d 791 (Mo. 1990); *Gen. Am. Life Ins. Co. v. Barrett*, 847 S.W.2d 125 (Mo.App.1993). In *Killian*, 903 S.W.2d at 215, the court held that the term "use" was not ambiguous, but at least one other Missouri court has held that the term does not have a fixed meaning. *Allstate Ins. Co. v. Hartford Accident & Indem. Co.*, 486 S.W.2d 38 (Mo.App.1972). Also, the facts in *Killian* were substantially different, the accident actually occurring while a child operated an off-road vehicle. Hence, there was no question about whether the accident was proximately caused by the use of the vehicle. Second, the Supreme Court of Missouri has not hesitated to find an ambiguity in the close case. *See Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810 (Robertson, J., dissenting opinion). Third, the two cases which stretched the definition of use to an extreme in an automobile policy, *Bituminous & Whitehead*, are indicators that the Missouri court will seek to find coverage rather than to deny it. Finally, how could this term be capable of only one meaning when there are so many cases around the country trying to figure it out? I conclude that the term "use" as it is applied in the Langton insurance policy is capable of multiple meanings and,

therefore, should be construed in favor of the insured to provide coverage.

■ Even if the phrase were unambiguous, I would still find that the use of the truck was not the proximate cause of Jeffrey's injuries. In *Beauty Supplies v. Hanover Ins.*, 526 S.W.2d 75 (Mo.App.1975), the court interpreted several insurance policies which covered acts of vandalism and malicious mischief but excluded losses from theft, burglary and larceny. The insured's property was damaged when the upstairs apartment was burglarized and a toilet was torn from the wall causing water leakage which seeped down and damaged the insured's property. The court acknowledged that the burglary and vandalism set events in motion which eventually resulted in the insured's damage, but they were not the proximate cause of the insured's damage. "[A]n antecedent circumstance is generally ignored in determining the proximate cause, that is to say, a situation which merely sets the stage for the later event is not regarded as being the proximate cause of the loss merely because it made possible the subsequent loss. For example, the explosion of gas and not the lighting of a match, is the proximate cause of loss where the explosion is caused by the lighting of a match, in a room filled with gas." *Id.* at 76. In other words, the match produced the energy that transformed the gas into an explosion which caused the damage. Here, the truck driven by Langton transferred its energy to the rope which was leveraged around the tree in a way that caused the limb to catapult forward out of control striking and killing Jeffrey. The predominate, efficient cause of Jeffrey's injury was the way in which the rope was leveraged around the tree and the fact that it was not securely tied to the embedded branch. According to the court in *Beauty Supplies*, "Recovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril." *Id.* at 77 (*citing* APPLEMAN, INSURANCE LAW AND PRACTICE, § 3083 at 311).

Plaintiff argues that many different means could have been used to pull the limb, and the truck was not a necessary part of the

plan. Defendant responds that this fact is irrelevant and does not "negate the truth that the truck was used." (Garnishee's Sugg. in Opp. to Garnishor's Mot. for Summ. J. at 9.) Plaintiff's argument, however, shows how the truck is remote in the chain of causation. It was the rope being placed at the 90–degree angle and leveraged against the tree that produced the thrust that catapulted the limb forward. That result would not have occurred without the negligently placed ropes regardless of whether a truck, a horse, or a tractor had been used. The fact that the result would have been the same regardless of the source of the power shows remoteness in terms of proximate cause and independence for purposes of concurrent causation.

Courts in foreign jurisdictions are split on cases similar to this one. There are two closely analogous cases outside Missouri which apply similar exclusions to deny coverage, and three that do not apply the exclusion. In *Hagen v. Aetna Cas. & Sur. Co.,* 675 So.2d 963 (Fla.App.1996), the court held that an auto use exclusion in a commercial general liability policy precluded coverage. In that case, a rug delivery was being made to a retailer. The retailer did not have a forklift to unload the carpet, so a rope was tied to a carpet roll. The rope was then attached to the bumper of the retailer's pickup truck. When the pickup drove forward, the carpet was pulled out and fell on the man delivering the carpet. The court held that the term "use" was unambiguous[2] and the vehicle use exclusion did apply because the driver of the truck was negligent in failing to clear the area before driving the truck forward. The negligence was related to the movement of the truck, and neither the rope nor the carpet was defective. The only defective part of the plan was failing to warn the victim to get out of the way. That negligence was inextricably tied to the movement of the vehicle and the auto use exclusion clause applied.

Likewise, in *State Farm Fire and Cas. Co. v. Huyghe,* 144 Mich.App. 341, 375 N.W.2d 442 (1985), the court applied the vehicle use exclusion clause to deny coverage. The insured drove his car under a clothesline, pulling it free and causing the attached cleat to strike his mother-in-law in the head. The court held that the clothesline was negligently placed because of its proximity to the garage and moving vehicles and the consequence of that negligence could not arise without a motor vehicle. In other words, all aspects of the insured's negligence were related to the use of a vehicle.

In both of these cases, the courts relied heavily on the fact that all allegations concerning the negligence of the insured and, hence, the basis for the insured's liability, were intertwined with the way in which the vehicle was operated. In *Hagen,* the negligence was the failure to warn people out of the way before moving the vehicle forward. In *Huyghe,* the negligence was in driving under the clothesline and causing it to break, and also in the location of the clothesline in the path of vehicles. The injuries were directly connected to vehicle-related negligence by the insured.

There are three closely analogous cases outside Missouri in which courts refused to find as a matter of law that the vehicle use exclusion applied. In *Lawver v. Boling,* 71 Wis.2d 408, 238 N.W.2d 514 (1976), a son helped his father attach some boards to the side of the family barn. The son was put on a lift chair and hoisted up by a rope attached to his father's vehicle. After some time, the rope frayed as it rubbed against the barn and the son fell. The court held that insurance coverage could be available under a farmer's general liability policy, even though it contained a vehicle use exclusion clause. The court emphasized that the insured had paid a premium for liability not caused by the vehicle and, therefore, coverage would be available if the jury found that the accident was caused in part by the negligent rigging of the ropes and the negligent choice of materials.

In *Johns v. State Farm Fire & Cas. Co.,* 349 So.2d 481 (La.App.1977), the insured attached a rope to the pickup truck and tied

---

2. "If asked whether this injury arose out of the operation or use of a vehicle, a reasonable person would, after inquiring as to whether it was a trick question, answer in the affirmative. The only question was how to apply the facts to this unambiguous term." *Id.* at 966.

the other end to a helper's waist. The helper then climbed up the tree using the rope as a safety device. The vehicle was moved forward to make the rope taut. The rope broke and the helper fell causing serious injuries. The court of appeals held that summary judgment could not be granted for the insurance company because the vehicle use exclusion clause did not necessarily apply. If the driver of the vehicle caused the injury in part by the operation of the vehicle and in part by the plan for climbing the tree, there would be coverage under the homeowner's policy.

Finally, in *Kalell v. Mut. Fire & Auto. Ins. Co.*, 471 N.W.2d 865, (Iowa 1991) the insured was pulling a dead limb on a rope attached to a pickup truck when the limb caused injury. The court in that case also held that a summary judgment for the insurance company was in error because there was a possibility that the jury would find that the injury was caused by both the negligent operation of the vehicle and the plan for the removal of the limb.

 In *Kalell, Johns* and *Lawver*, the courts relied on the doctrine of concurrent causation to avoid a judgment against the insured. That doctrine provides that if one event is covered by insurance and another is excluded, there will be insurance coverage unless the excluded event is the sole proximate cause of the injury. Another requirement of the doctrine is that the two events must be independent and separate. Comment, Insurance Law–Concurrent Causation: Examination of Alternative Approaches, 527 S. Ill. U. L.J. (1985).

The doctrine of concurrent causation has been recognized in Missouri. *Braxton v. U.S. Fire Ins. Co.*, 651 S.W.2d 616, 620 (Mo. App.1983); *Centermark*, 897 S.W.2d at 101; *Beauty Supplies*, 526 S.W.2d at 78. While recognizing the doctrine of concurrent causation, some Missouri cases have found it not to apply. *Shelter Mut. Ins. v. Politte*, 663 S.W.2d 777 (Mo.App.1984); *Am. States Ins. Co., Inc. v. Porterfield*, 844 S.W.2d 13 (Mo. App.1992); *Hartford Cas. Ins. Co. v. Budget Rent-A-Car of Missouri, Inc.*, 864 S.W.2d 5 (Mo.App.1993). All these cases, however, involved allegations of negligent supervision or entrustment. The Missouri courts uniformly held that to recover for negligent supervision or negligent entrustment, a plaintiff had to show that a vehicle had been negligently operated. Hence, the injury was not caused by two separate and independent events and the doctrine of concurrent causation did not apply. In the case before me, the insured's liability was triggered by his negligent plan for the removal of the tree. The negligent operation of the truck was not a necessary element in the state court action. Liability did not flow from the negligent operation of a vehicle. This distinction was recognized in *Centermark*, 897 S.W.2d at 102. In that case the court held that the doctrine of concurrent causation applied, permitting insurance coverage. The insured's liability occurred because it failed to adequately supervise and train its staff. As a result, an unauthorized person got control of the insured's vehicle and operated it negligently. The court held that the companies' commercial general liability policy provided coverage even though it contained a vehicle use exclusion clause almost identical to the one in Langton's homeowner's policy. The court reasoned that the use of the automobile was incidental "not an essential element of the negligence claim against insured." *Id.* at 103. The connection between the use of the automobile and the injury in the *Centermark* case is even closer than in the present case. In *Centermark*, the insured's vehicle was negligently operated and yet the court found the doctrine of concurrent causation to apply. "[W]hile one proximate cause of the damage may have been the use of an automobile owned by *Centermark*, which was clearly excluded from coverage, a concurrent cause may have been Centermark's negligence in supervising and training employees, a covered risk." *Id.* at 101.

 Based on Missouri precedent, the court finds that the operation of the vehicle and the negligent plan for tying the ropes were, at most, concurrent causes of Jeffrey's death. The use of the truck was an antecedent, independent factor which contributed to Jeffrey's injuries. The vehicle exclusion clause, therefore, does not preclude coverage for the negligent plan.

Finally, Mr. Langton paid for two policies to cover damages for which he became legally liable. His liability in state court arose out of the manner in which he arranged the ropes around the tree, not the operation of the truck. He was in his backyard performing a household task and the vehicle only provided the horsepower to apply leverage on the rope. Under these circumstances, it is reasonable for him to expect that his homeowner's policy would provide protection.

## V. CONCLUSION

For all the foregoing reasons, I find that the vehicle use exclusion clause in the Langton homeowner's policy does not apply. Accordingly, I grant the Garnishor/ Plaintiff's Motion for Summary Judgment (Doc. # 32 ) and deny the Garnishee/ Defendant's Motion for Summary Judgment (Doc. # 26).