Valerie HUNT and Michael Hunt,
Sr., Plaintiff/Respondent,

v.

CAPITOL INDEMNITY
CORPORATION, Defendant/Appellant.

No. ED 76658.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 11, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 15, 2000.

Application for Transfer Denied
Oct. 3, 2000.

Michael E. Bub, Russell F. Watters, St.
Louis, for appellant.

Robert H. Pedroli, Jr., Eric A. Rutten-cutter, Clayton, for respondent.

WILLIAM H. CRANDALL, Jr., Presiding Judge.

Defendant, Capitol Indemnity Corporation (Capitol Indemnity), appeals from summary judgment entered in favor of Valerie Hunt and Michael Hunt, Sr. We reverse and remand with directions.

■ On July 7, 1996, Michael Hunt, Jr. was stabbed and killed "outside of" Justin's Lounge in St. Louis, Mo. Michael Hunt, Jr.'s parents, Valerie Hunt and Michael Hunt, Sr. (plaintiffs herein), brought an action against Gerald Haverfield (Haverfield), an owner and operator of Justin's Lounge.[1] Plaintiffs alleged that that their son was intentionally stabbed and killed by criminal third parties and Haverfield's negligence was the direct and proximate cause of their son's death. Plaintiffs and Haverfield waived a jury trial and liability was not contested. The court found that Haverfield negligently failed to protect Michael Hunt, Jr. "from his assailants, who were known dangerous, intoxicated patrons on Haverfield's premises; and that Haverfield negligently failed to remove these patrons from said premises after prior similar violent acts by these patrons against other persons on said premises." The court further found that Haverfield's negligent acts were the direct cause of Michael Hunt, Jr.'s death. The court entered judgment in favor of plaintiffs for $150,000.

At the time of Michael Hunt, Jr.'s death, Haverfield had liability insurance with Capitol Indemnity. The Capitol Indemnity policy contained an endorsement titled "EXCLUSION–ASSAULT OR BATTERY." Plaintiffs filed a petition to collect insurance naming Capitol Indemnity

as the defendant. Capitol Indemnity filed an answer and counterclaim for declaratory judgment. Plaintiffs and Capitol Indemnity filed summary judgment motions.[2] In the motions, the parties presented arguments as to whether the assault and battery exclusion applied. The trial court found that the exclusion did not "expressly exclude coverage for damages arising from an assault and battery caused by a negligent act or omission that does not involve violence or force on the part of the insured. The insured did not engage in the assault and battery, but rather negligently created the circumstances under which the violent act took place." The court also found that the exclusion "did not specifically exclude concurrent causes of assault and battery." The court concluded that the exclusion did not exclude plaintiffs' claim against Haverfield. Accordingly, the court granted plaintiffs' summary judgment motion and denied Capitol Indemnity's summary judgment motion. The court entered judgment in favor of plaintiffs for $100,000, which the court found to be the amount of coverage under the policy. Capitol Indemnity appeals, raising two points.

■ This court's review of the trial court's grant of summary judgment is *de novo*. *Southeast Bakery Feeds, Inc. v. Ranger Ins. Co.*, 974 S.W.2d 635, 638 (Mo. App. E.D.1998). Where the underlying facts are not in question, a dispute arising from the interpretation and application of an insurance contract is a matter of law for the court. *Id.*

■ If the language of an insurance policy is unequivocal, it should be given its plain meaning, even if it restricts coverage. *Killian v. Tharp*, 919 S.W.2d 19, 21 (Mo. App. E.D.1996). Exclusionary clauses that are ambiguous are read in favor of the

1. Generally, one person owes no duty to protect another from a deliberate criminal attack by a third person. However, the law does recognize certain exceptions. *Knop v. Bi-State Development Agency*, 988 S.W.2d 586, 589 (Mo.App. E.D.1999).

2. A different judge considered the summary judgment motions than entered the original judgment of liability.

insured. *Id.* An insurance policy is ambiguous if the provisions are duplicitous or difficult to understand. *Id.* Courts are not permitted to create ambiguities to distort the language of an unambiguous policy. *Shahan v. Shahan,* 988 S.W.2d 529, 535 (Mo. banc 1999).

■ The assault and battery exclusion at issue provides in part as follows:

### EXCLUSION–ASSAULT OR BATTERY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**

**COMMERCIAL LIQUOR LIABILITY COVERAGE PART**

. . .

■ This insurance does not apply to *bodily injury, property damage* or *personal injury* arising out of *assault, battery,* or *assault and battery.* This exclusion applies to all coverages under this coverage part.

Definitions:

1. *Assault*—A willful attempt or offer with force or violence to harm or hurt a person without the actual doing of the harm or hurt.

2. *Battery*—Any battering or beating inflicted on a person without his or her consent.

3. *Assault and Battery*—For purposes of this insurance, this term includes *assault and battery,* and specifically includes the ejection or expulsion with force or violence, or attempt thereof, of any person from the premises by the insured and his/her/its employees or agents.

**3.** For a discussion of cases analyzing assault and battery exclusions, see Kimberly J. Win-

Capitol Indemnity argues in its first point that the trial court erred in granting plaintiffs' motion for summary judgment because the policy unambiguously precludes coverage for negligence claims premised upon assault and battery. We agree.

The Western District considered an assault and battery exclusion in *Capitol Indemnity Corp. v. Callis,* 963 S.W.2d 247 (Mo.App. W.D.1997). In that case, the plaintiff in the underlying lawsuit brought an action against Steve Callis, d/b/a The Silver Bullet Lounge, as a result of an assault and battery committed by Callis's employees. *Callis,* 963 S.W.2d at 248. At the time of the assault and battery, Callis had business insurance with Capitol Indemnity. *Id.* Callis's policy had an assault and battery exclusion that stated the insurance did not apply to bodily injury arising out of assault, battery or assault and battery. *Id.* The court stated that the plaintiff's allegations revealed that he was claiming that "his injuries arose out of the assault and battery, which, in turn, was caused by Callis'[s] negligence." *Id.* at 250. The court further stated that the "exclusionary language specifically states that it does not apply to bodily injury arising out of an assault and or battery. This would include negligence actions alleging a failure to protect a patron, which arise out of this intentional act." *Id.* The court concluded that the assault and battery exclusion excluded coverage. *Id.* at 251. In so holding, the court relied on *Acceptance Ins. Co. v. Winning Concepts of Westport, Inc.,* 842 S.W.2d 206 (Mo.App. W.D.1992), and cases from several other jurisdictions considering assault and battery exclusions. *Id.* at 249–51; *see also Capitol Indemnity Corp. v. Blazer,* 51 F.Supp.2d 1080, 1086–88 (D.Nev.1999) (citing *Callis,* 963 S.W.2d at 250)(further citations omitted); *Eady v. Capitol Indemnity Corp.,* 232 Ga.App. 711, 502 S.E.2d 514, 515–16 (1998).[3]

bush, Annotation, *Validity, Construction, and Effect of Assault and Battery Exclusion in*

We find the reasoning in *Callis* and the cases cited therein persuasive for the present case. As in *Callis*, the policy here specifically provides that the insurance does not apply to bodily injury **arising out** of assault, battery or assault and battery. (emphasis added). Under the policy, "¶'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The trial court found that Haverfield negligently failed to protect Michael Hunt, Jr. from his assailants and failed to remove them from the premises. The policy here unambiguously excludes coverage for "bodily injury" arising from assault, battery or assault and battery caused by the insured's, in this case Haverfield's, negligence.

■■■ Plaintiffs argue that the exclusion is ambiguous because it does not unequivocally exclude bodily injury to a patron by another patron resulting from Haverfield's negligence. According to plaintiffs, the exclusion only applies for an assault and battery committed by Haverfield, his agents or employees. Plaintiffs rely on this court's holding in *Braxton v. United States Fire Ins. Co.*, 651 S.W.2d 616 (Mo. App.1983).

In that case, an intoxicated gas station attendant shot Braxton and he obtained a judgment against the station owner for negligent supervision. *Braxton*, 651 S.W.2d at 617. The owner's liability insurance carrier denied coverage based on a policy exclusion that provided that the insurance would not apply "'to bodily injury and property damage arising out of the ownership or use of any firearm.'" *Id.* The "'Exclusions'" portion of the policy stated that the insurance did not apply to bodily injury or property damage arising out of certain enumerated acts "'by,'" "'for'" or "'on behalf of'" the named insured. *Id.* at 618. The firearm exclusion at issue was added to the policy by typewritten endorsement and did not specify whether the ownership or use of a firearm had to be by,

for or on behalf of the named insured. *Id.* This court held that the exclusion did not "unequivocally exclude acts arising out of the ownership or use of a firearm by *any* person under *any* circumstances" and that a "reasonable person reading the exclusion in context could fairly conclude that the exclusion applied only if the insured himself owned or used a firearm in connection with his business, or if someone else used the firearm 'for him' or 'in his behalf.'" *Id.* at 619. Because the insured did not own or use the firearm and it was not used "'for'" him or "'in his behalf,'" this court concluded that under the circumstances the exclusion did not apply. *Id.*

Here, the "Exclusions" portion of the policy does not contain the by, for or on behalf of language found in *Braxton*. Furthermore, in addition to the assault and battery exclusion, other endorsements excluding coverage do not contain the language discussed in *Braxton*. The exclusion unequivocally excludes coverage from bodily injury arising out of assault, battery or assault and battery. Accordingly, *Braxton* is distinguishable from the present case. To interpret the exclusion to apply only for an assault and battery by Haverfield, his agents or employees, would be contrary to the plain meaning of the policy. *Berg v. Schultz*, 190 Wis.2d 170, 526 N.W.2d 781, 783–84 (1994).

Capitol Indemnity argues in its second point that the trial court erred in granting plaintiffs' summary judgment motion because Haverfield's "alleged" negligence was not a separate, concurrent and non-excluded cause of· Michael Hunt, Jr.'s death. Plaintiffs contend that Haverfield's negligence was a separate and non-excluded cause, relying on *Braxton* and *Centermark Properties, Inc. v. Home Indemnity Co.*, 897 S.W.2d 98 (Mo.App. E.D.1995).

In addition to holding that the firearm exclusion did not apply, this court in *Braxton* also considered Braxton's argument that the trial court could have found cover-

age on the theory that the insured's negligent supervision was a separate and non-excluded cause of his injuries. *Id.* at 619. This court stated that although no Missouri cases were directly on point, "it is widely accepted that where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable so long as one of the causes is covered by the policy." *Id.* This court held that the insured's negligence was a separate, concurrent and non-excluded cause of his liability. *Id.* at 620.

The analysis of the concurrent cause doctrine in *Braxton* was relied on by this court in *Centermark Properties, Inc.* In that case, a police officer brought an action after his vehicle was struck by a vehicle owned by Centermark Properties but driven by a third party who was a non-permissive driver. *Centermark Properties,* 897 S.W.2d at 99, 103. The officer brought an action against Centermark Properties and a security officer employed by it, alleging several theories of negligence.[4] *Id.* at 99. Centermark Properties had commercial liability coverage issued by Home Indemnity Co. *Id.* The policy at issue had an exclusion that provided the insurance did not apply "to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile or aircraft owned or operated by or rented or loaned to any insured." *Id.* at 100. Relying on *Braxton,* this court stated:

> we find coverage based on the fact that there are allegations of negligence that appear independent of ownership, maintenance, operation, or use of an automobile—that is, that Centermark failed to comply with set procedures for apprehending, subduing, and controlling third parties and persons suspected of criminal activity and it failed to have proper and adequate hiring practices and training policies and programs for its security officers. This is consistent with *Braxton,* because while one proximate cause of the damage may have been the use of an automobile owned by Centermark, which was clearly excluded from coverage, a concurrent cause may have been Centermark's negligence in supervising and training employees, a covered risk.

*Id.* at 101. This court held that the ownership or use of an automobile was incidental and "not an essential element of the negligence claim against insured." The officer's allegations contained separate and non-excluded causes of his injuries, apart from use or ownership of a vehicle. *Id.* at 103; *see also Columbia Mutual Ins. Co. v. Neal,* 992 S.W.2d 204, 207–09 (Mo.App. E.D.1999).

The holdings in *Braxton* and *Centermark Properties* are not persuasive under the facts presented here. In this case, the assault and battery is not incidental to plaintiffs' negligence claims. The damages arise from the assault and battery. Without the underlying assault and battery, there would have been no injury and therefore no basis for plaintiffs' action against Haverfield for negligence. The assault and battery and Haverfield's negligence are not mutually exclusive; rather the acts are related and interdependent. Haverfield's negligence, as found by the trial court, was not a separate and non-excluded cause apart from the assault and battery. *See Friar v. Statutory Trustees*

---

4. The officer alleged that Centermark Properties failed to: (1) comply with set procedures for subduing and controlling third parties; (2) follow set procedures and regulations regarding the control of one's own security vehicle; (3) comply with set procedures and regulations for the apprehension of persons suspected of criminal activity within the property patrolled by Centermark Properties; (4) have adequate rules and regulations for subduing and controlling third parties, to govern the control of one's own security vehicle, and to govern the apprehension of persons suspected of criminal activity with the property patrolled by Centermark Properties; (5) have proper and adequate hiring practices for security officers; and (6) have proper and adequate training policies and programs for its security officers. *Centermark Properties,* 897 S.W.2d at 99.

of *Kirkwood Sports Ass'n., Inc.,* 959 S.W.2d 808, 810–11 (Mo.App. E.D.1997); *see also Jefferson Ins. Co. v. Dunn,* 269 Ga. 213, 496 S.E.2d 696, 699 (1998); *Sphere Drake Ins. Co. v. Ross,* 80 Ohio App.3d 506, 609 N.E.2d 1284, 1286 (1992); *Burlington Ins. Co. v. Mexican American Unity Council, Inc.,* 905 S.W.2d 359, 362–63 (Tex.App.–San Antonio 1995).

The judgment is reversed and the cause is remanded for proceedings consistent with this opinion.

MARY K. HOFF, J., and JAMES A. PUDLOWSKI, Sr.J., concur.