

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| LATRONYA ADAMS, | ) | No. ED106121 |
| | ) | |
| Appellant/Cross-Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | |
| CERTAIN UNDERWRITERS AT | ) | Honorable Joan L. Moriarty |
| LLOYD'S OF LONDON, SUBSCRIBING | ) | |
| TO CERTIFICATE NO. LCL 004029, | ) | |
| | ) | |
| Respondent/Cross-Appellant, | ) | |
| | ) | |
| PLAZA BANQUET CENTER, INC. d/b/a | ) | |
| LIGHTS ON BROADWAY PLAZA GRILL | ) | Filed: July 16, 2019 |
| and ERIC GALLOWAY, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| P & B REAL ESTATE, LLC and | ) | |
| HARTFORD FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Respondents. | ) | |

### Introduction

This appeal is a garnishment action brought by appellant Latronya Adams (Adams) against Certain Underwriters at Lloyd's of London (Underwriters), who issued a general commercial insurance policy (Policy) to Plaza Banquet Centers, Inc. d/b/a Lights on Broadway Plaza Grill (Lights on Broadway), an administratively dissolved Missouri corporation. Adams

brought a negligence suit against Lights on Broadway and Eric Galloway (Galloway) for allegedly causing the death of Orlando Willis (Willis), Adams's son, who was shot outside of a nightclub while assisting Galloway with throwing a party. After Adams and Galloway entered into an agreement under Section 537.065[1], judgment was entered against Galloway and Lights on Broadway in the amount of $5,000,000. Subsequently, Adams brought a garnishment claim against Underwriters, Lights on Broadway's insurer, seeking to collect on the judgment from the underlying tort case. After lengthy litigation and a bench trial, the garnishment court entered its judgment on the various claims and cross-claims of the parties. All parties now appeal from the rulings of the garnishment court.

STATEMENT OF FACTS

On December 25, 2010, 16-year-old Willis and his friend Marquise Davenport (Davenport) were helping Galloway set up a party at Pulse Night Club. Pulse Night Club was located in a small strip mall with two other businesses, a flea market and a banquet hall. All three of the businesses were owned or operated by Galloway.

The party had been advertised on Facebook and by word of mouth as a place where young people were welcome. However, soon after their arrival, Willis and Davenport were told the venue would not allow people under 18 years old. They and a large group of other children and young adults were told to wait outside. As they waited, the large crowd began to grow restless, and arguments broke out. Davenport testified later the arguments escalated, and one or more individuals in the crowd began firing guns. Davenport observed at least one individual hanging out of the window of a moving car, firing shots into the crowd. He recalled hearing more than one gun being fired. As shots rang out, the crowd began to panic. Some party-goers

---

[1] All statutory references are to RSMo 2000 unless otherwise noted.

2

attempted to enter Pulse Night Club to escape the shooting. But as they tried to open the doors, the panicked party-goers discovered the doors had been locked. Locked out of the venue without cover, Davenport was shot in his wrist; Willis was shot in the face. Davenport witnessed Willis slump to the ground, grievously injured. Willis died of his injuries several days later.

Adams, Willis's mother, filed suit against Galloway, his related businesses, and the property owners, seeking damages for the wrongful death of her son. The petition commencing the action went through several iterations; the fourth and final petition on which she proceeded alleged negligence on the part of Galloway and Lights on Broadway, which caused the shooting death of her son.[2] Specifically, the Fourth Amended Petition (Petition) alleged Galloway, Lights on Broadway and the related business entities responsible for throwing the December 25, 2010 party were negligent in that they had a duty to provide security for the party and failed to do so in a reasonable manner. The Petition noted Galloway and related parties were aware of the need for security and had agreed to it in advance. However, security personnel were not scheduled to arrive until 11:00 p.m. that evening, while the doors were to open to admit guests at 10:00 p.m. Willis and other individuals who helped set up for the party were allowed onto the premises even earlier. The Petition alleged there had recently been numerous violent crimes in the area, which would have put a reasonable person on notice of a need to provide security for the party before 11:00 p.m. As a result of the negligent failure to provide security, an argument outside of the nightclub escalated into gunfire. Although Willis was not involved in the argument, or an intended victim of the shooting, he was inadvertently struck by a stray bullet fired recklessly by an unknown individual. The Petition also alleged Galloway and Lights on Broadway were

---

[2] Also named as defendants in the Petition were some of Galloway's other businesses, as well as P&B Investments, Inc., a Missouri company that owned and managed the property on which the shooting occurred, and who leased the premises to Galloway and his business. By the end of the negligence case, all other defendants except for Galloway and Lights on Broadway had been dismissed.

responsible for negligently locking Pulse Night Club's doors after the gunfire began, which left individuals outside, including Willis, unable to escape the gunfire.

At the time of the shooting, Lights on Broadway was insured under the Policy issued by Underwriters. After the filing of Adams's suit, Galloway informed Underwriters of the claim and demanded they defend him. Based on the allegations in Adams's Third Amended Petition, Underwriters refused, stating they believed the claim was not covered under the Policy. Specifically, Underwriters believed the claim was excluded by the "assault and battery exclusion" (Assault and Battery Exclusion) in Lights on Broadway's policy. This exclusion reads:

> 2. EXCLUSION – EXPECTED OR INTENDED INJURY AND ASSAULT OR BATTERY
>
> Exclusion a. of Coverage A (Section I) is deleted and replaced with the following: "Bodily injury" or "property damage":
>
> (1) expected or intended from the standpoint of any insured
>
> (2) arising out of assault or battery, or out of any act or omission in connection with assault or battery, or with the prevention or suppression of an assault or battery; or
>
> (3) arising out of charges or allegations of negligent hiring, training, placement, or supervision with respect to (1) or (2) above.

Underwriters was later provided with the fourth and final Petition, which clarified the negligence suit arose from Willis being an unintended victim of the shooting, and not involved in the argument that led up to it. Adams contacted Underwriters, demanding they settle the negligence claim for the policy limit of $1,000,000. Underwriters refused, still basing their denial of coverage on the Assault and Battery Exclusion. In a denial letter received by Galloway and Adams, Underwriters stated it also reserved "any and all claims, rights, and defenses they may discover in connection with any additional information provided in this matter."

4

Believing Underwriters' conclusion that the Assault and Battery Exclusion applied to the claim was incorrect, Galloway and Adams entered into an agreement pursuant to Section 537.065, whereby Adams agreed to limit any attempt to collect from a potential judgment against Galloway and Lights on Broadway to payments due under the Policy. In return, Galloway and Lights on Broadway agreed to cooperate with Adams in her pursuit of a claim against Underwriters, and to forfeit any right to appeal a judgment against them in the negligence case.

In the meantime, Underwriters filed an action for declaratory relief in federal court to determine their obligations under the Policy with respect to Adams's claim. This action was stayed before its resolution.

The state court negligence trial consisted of expert testimony offered by Adams, as well as affidavits from Galloway and Davenport. Adams's expert witness was Colonel Hugh Mills, Jr., the undersheriff of Jackson County, Missouri (Col. Mills). Col. Mills testified about his extensive experience organizing security for various venues, including hip hop parties/shows like the one at which Willis was shot. He testified about the standard operating procedure he would have followed, including taking stock of the crime statistics of the surrounding area. He noted his own investigation had revealed the area around Pulse Night Club had had numerous dangerous criminal attacks, including assaults and other crimes against persons. Given this knowledge, Col. Mills testified to what level of security and other precautions should have been provided in order to ensure the party's participants' safety.

In short, in Col. Mills's expert opinion, the safety and security measures provided by Galloway and Lights on Broadway fell well below the standard of care that would have been reasonable. Col. Mills also opined the act of locking the doors of the club once the shooting

5

began exposed the party-goers to further risk of injury, and may have constituted a violation of the fire code.

The testimony of Galloway was presented to the court via affidavit. Galloway stated Lights on Broadway was co-promoting and co-sponsoring the party at Pulse Night Club that evening; that the guests were parking in the lot shared by the businesses at that location; that he was on the premises in the course of his management duties for Lights on Broadway; and that he had entered the address which housed Lights on Broadway to retrieve supplies and equipment and to organize manpower for the event at Pulse Night Club. Galloway also stated that although the party was to begin at 10:00 p.m., he had not arranged for any security to be on the premises until 11:00 p.m. He stated he failed to have adequate security available despite having been warned to do so by the St. Louis Metropolitan Police Department. He stated that when he had arrived at the venue he had noticed the large group of individuals gathered outside, who had been there since 8:00 or 9:00 p.m., many of whom were too young to attend the party, but he had not called the police or attempted to disperse them.

After hearing evidence and argument, the trial court entered judgment against both Galloway and Lights on Broadway, finding them jointly and severally liable for negligently causing the death of Willis. The trial court awarded Adams $5,000,000 as and for actual damages. The trial court did not make written findings of fact or conclusions of law.

After receiving the judgment, Adams filed a garnishment action against Underwriters to collect under the Policy pursuant to the Section 537.065 agreement with Galloway and Lights on Broadway. Her petition contained her own claim for equitable garnishment and the claims of Galloway and Lights on Broadway for bad faith refusal to defend, bad faith refusal to settle, and breach of fiduciary duty, which had been assigned to her under the Section 537.065 agreement.

6

In its answer, Underwriters denied the Policy gave rise to any duty to defend Galloway and Lights on Broadway from Adams's negligence claim. Underwriters claimed the Assault and Battery Exclusion barred any coverage for Adams's claim. Underwriters also asserted the "Classification Limitation" provision of the Policy (Classification Limitation) also excluded Adams's claim. The Classification Limitation excludes coverage for injuries that do not arise "out of those operations or premises which are not classified or shown on the Commercial General Liability Coverage Part Declarations, its endorsements or supplements." The Commercial General Liability Coverage Part Declarations page lists the insured "premises" as 8344-8350 North Broadway, St. Louis, MO. Nothing on this page is labeled "operations"; however, under the "Premiums" table the Policy lists the premiums charged as being for the classifications of "Halls" and "Restaurants."

Underwriters also raised a number of other defenses. It asserted Galloway was not acting on Lights on Broadway's behalf on the evening of the shooting, but on behalf of some other entity. It also accused Galloway, Lights on Broadway, and Adams of engaging in fraud to obtain the underlying judgment, thus voiding the Section 537.065 agreement and any right Adams may have to collect under the Policy. In response, Galloway and Lights on Broadway filed a cross-claim against Underwriters, claiming defamation for Underwriters' accusation of fraud.

Numerous pretrial motions ensued. Ultimately, the score was as follows: The garnishment court dismissed the defamation cross-claim against Underwriters by Galloway and Lights on Broadway. The garnishment court denied summary judgment to Underwriters on their claim the Assault and Battery Exclusion barred Adams's claim. Concordantly, the garnishment court granted summary judgment on Galloway's and Lights on Broadway's claim of failure to defend, finding the allegations in the negligence petition were sufficient to give rise to a duty to

7

defend from Adams's suit, and were not facially excluded under the assault and battery exclusion. As this claim had been assigned to Adams in the Section 537.065 agreement, Adams was awarded Galloway's and Lights on Broadway's attorney's fees from the underlying negligence action. Judgment was entered against Adams, Galloway, and Lights on Broadway in favor of Underwriters for the claims of bad faith failure to settle and breach of fiduciary duty.

A trial was conducted on the garnishment claim between May 1 and May 3, 2017. The testimony largely related to two topics: what steps the insurance company took after learning of the claim, and details around Galloway's business dealings. Underwriters sought to introduce evidence at trial relating to the shootings. Specifically, they sought to introduce testimony from a police detective who investigated the shooting and from Davenport. This testimony was meant to show Adams's characterization of Willis's shooting as "inadvertent" was inaccurate, and the gunfire was not random. The garnishment court refused to hear testimony from these witnesses.

Facts relating to Galloway's businesses at and around the location of the shooting were developed at trial, and the garnishment court made several related findings. The garnishment court found Galloway operated businesses out of the shared building at the location: Lights on Broadway, a banquet hall and restaurant; a warehouse operated under another company; Odd Lots, a flea market located between Lights on Broadway and the nightclub; and Pulse Night Club, which the trial court found was operated by Broadway Entertainment. Broadway Entertainment was a separate business entity from Lights on Broadway, and Galloway was Broadway Entertainment's agent or owner. The garnishment court found Galloway operated under a trade name, EGE Entertainment, when promoting an event at one of his businesses, and deposited the proceeds from such events with the business at which it was held, for tax purposes. The garnishment court also found Galloway had obtained a separate insurance policy for

8

Broadway Entertainment, the company under which he managed the Pulse Night Club, but that policy had lapsed due to nonpayment, and was not in effect at the time of Willis's shooting.

Given these facts, the trial court concluded that, although Underwriters had a duty to defend Lights on Broadway from Adams's suit, and had breached that duty by failing to do so, ultimately there was no coverage for the claim under the Policy. The garnishment court held:

> The Classification Limitation in the [] Policy bars coverage for the judgment entered in the Underlying Action against Lights on Broadway because the judgment is based on a shooting that occurred at the Pulse Night Club [] located at 8370 North Broadway. The underlying judgment was not entered against Lights on Broadway for liability based on its operations as a banquet hall or restaurant located at 8344-8350 N. Broadway.

The garnishment court also held:

> The proper entity to be sued in this case was Broadway Entertainment which, on its insurance application, gave an address of 8370 North Broadway. Pulse Night Club was located at 8370 North Broadway…It is clear that Galloway, at one time, had purchased a separate policy of liability insurance to provide coverage for that entity…[This] policy had lapsed at the time of the shooting for non-payment of premiums…

The garnishment court also found it significant there was "no evidence" that Galloway was performing the duties of an "executive officer" of Lights on Broadway. Thus, he did not qualify as an "insured" under the Policy and was not entitled to coverage for the judgment entered against him in the underlying action. Given the lack of coverage under the Policy for both Galloway and Lights on Broadway, Adams's garnishment claim was denied. This resolved the final claim and issue of the underlying garnishment case.

All parties now appeal.

## Points Relied On

Adams appeals from the garnishment court's judgment against her on her claim for payments owed under the Policy. Adams raises six points why the garnishment court erred in

9

applying the Classification Limitation to bar her claim. We discuss only Point VI of Adams's appeal: The garnishment court erred in concluding the claim was excluded by the Classification Limitation because the findings upon which that ruling is predicated are precluded by findings made by the trial court in the underlying negligence act, which are binding on the garnishment court. Because we reverse the judgment of the garnishment court on this point, we do not analyze Adams's remaining points of error.

Underwriters makes three claims of error. Point VIII claims the garnishment court erred in finding Underwriters had any duty to defend Galloway or Lights on Broadway because the Assault and Battery Exclusion bars coverage for Willis's and Adams's injury. Point IX claims the garnishment court erred in granting Adams's motion for summary judgment on her bad faith failure to defend the claim. Point X claims the garnishment court erred by excluding the testimony of Davenport and a police detective involved in investigating Willis's shooting.

Finally, in a single point, Galloway and Lights on Broadway appeal the garnishment court's dismissal of their defamation cross-claim against Underwriters. Their point claims the garnishment court misapplied the law when granting Underwriters' motion to dismiss.

We address these points out of the order presented in an attempt at clarity.

<u>Standard of Review</u>

We review the garnishment court's judgment entered after a bench trial under the standard announced in <u>Murphy v. Carron</u>, 536 S.W.2d 30, 32 (Mo. banc 1976). "On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of evidence, or erroneously declares or applies the law." <u>Ivie v. Smith</u>, 439 S.W.3d 189, 199-200 (Mo banc. 2014) (citation omitted). This Court defers to the garnishment court's findings of facts; application of the law to those

10

facts is reviewed *de novo*. Arndt v. Arndt, 519 S.W.3d 890, 898 (Mo. App. E.D. 2017) (citation omitted). "Where resolution of the controversy involves the interpretation of an insurance policy, we give no deference to the trial court. That is a question of law which we review de novo." Penn-Star Ins. Co. v. Griffey, 306 S.W.3d 591, 596 (Mo. App. W.D. 2010), citing Green v. Penn–Am. Ins. Co., 242 S.W.3d 374, 378 (Mo. App. W.D. 2007).

On those points which involve the garnishment court's granting summary judgment, the standard of review is essentially *de novo*. Assurance Co. of America v. Secura Ins. Co., 384 S.W.3d 224, 230 (Mo. App. E.D. 2012).

Underwriters' Point VIII – Wrongful Failure to Defend

The trial court found Underwriters had a duty to defend Galloway and Lights on Broadway from Adams's negligence claim. We agree and affirm.

A liability insurer has "two distinct duties, the duty to indemnify the insured for covered losses, and the duty to defend the insured in any lawsuit seeking damages that would be covered losses." Trainwreck West Inc. v. Burlington Ins. Co., 235 S.W.3d 33, 44 (Mo. App. E.D. 2007). An insurance company's duty to defend an insured from suit is broader than its duty to indemnify. Allen v. Cont'l W. Ins. Co., 436 S.W.3d 548, 552 (Mo. banc 2014). The duty to defend is determined by comparing the facts (1) alleged in the petitions, (2) known to the insurer at the outset of the case, or (3) readily apparent to the insurer at the outset of the case. Id. at 553. "If there is no potential for coverage based on those facts, then the insurer has no duty to defend." Id., citing Marshall's U.S. Auto Supply v. Maryland Cas. Co., 189 S.W.2d 529, 531 (Mo. 1945). "To extricate itself from the duty to defend the insured, the insurance company must prove that there is ***no possibility*** of coverage." Truck Ins. Exch. v. Prairie Framing, LLC, 162 S.W.3d 64, 79 (Mo. App. W.D. 2005) (emphasis in original).

11

The garnishment court found Adams's Petition set out a negligence claim naming Lights on Broadway, one of several "Galloway-related businesses" named in the pleadings, as a defendant. Lights on Broadway is the named insured under the policy. Injury resulting from the negligence of the named insured is unambiguously a covered liability under the policy. Taken together, this means Underwriters had a duty to defend Lights on Broadway, and Galloway to the extent he was acting as its agent, in the underlying tort case.

At trial and on appeal, Underwriters nevertheless argues it had no duty to defend Galloway and Lights on Broadway because the Assault and Battery Exclusion in the Policy bars coverage for Adams's negligence claim. The garnishment court found this argument unavailing, as do we.

**Assault and Battery Exclusion**

The Policy covering Lights on Broadway at the time of the shooting contained a provision excluding coverage for injury "arising out of assault or battery, or out of any act or omission in connection with assault or battery, or with the prevention or suppression of an assault or battery."

Interpretation of an insurance policy is a question of law this Court reviews *de novo*. Clark v. Am. Family Mut. Ins. Co., 92 S.W.3d 198, 200 (Mo. App. E.D. 2002). Words in the policy are given their plain meaning and, absent ambiguity, the policy is enforced according to its terms. Id. The purpose of an insurance contract is to cover liabilities, and thus they are generally interpreted to provide coverage rather than defeat it. Centermark Properties, Inc. v. Home Indem. Co., 897 S.W.2d 98, 100-01 (Mo. App. E.D. 1995). Exclusionary clauses are interpreted strictly against the insurer. Id.

12

As stated above, in order to escape its duty to defend, Underwriters must prove there is no possibility that Adams's claim would be covered under the Policy. Prairie Framing, LLC, 162 S.W.3d at 79. Underwriters argues the presence of the Assault and Battery Exclusion is sufficient proof. Underwriters' argument would have an easier path to success had Adams sued Galloway and Lights on Broadway for assault and battery, but she did not; Adams sued Galloway and Lights on Broadway for negligence.

This in itself does not defeat Underwriters' argument. Underwriters points to several Missouri cases which hold that assault and battery provisions that exclude coverage for claims "arising out of" an assault and battery are sufficiently broad to bar coverage for negligence claims that involve assault and battery. One such case is Green v. Penn-Am. Ins. Co., 242 S.W.3d 374 (Mo. App. W.D. 2007). Factually similar to the instant case, Green involved a club patron killed outside a nightclub by a bullet fired by an unknown assailant. Id. at 377. The victim's family filed suit against the club and obtained a judgment under a claim the nightclub owner negligently maintained a nuisance, which caused the victim's death. Id. at 378. When the victim's family sought to collect against the nightclub's insurer in a garnishment action, the insurer asserted that an assault and battery exclusion barred their claim. Id. at 383. Finding the provision to be unambiguous, the Western District held that, although the claim was for negligence, because the claim still involved an assault and battery the plain language of the policy still excluded the claim. Id. Several other Missouri cases have also held that negligence actions arising out of an assault and battery are excluded by similar assault and battery exclusions. See Penn-Am. Ins. Co. v. The Bar, Inc., 201 S.W.3d 91, 96 (Mo. App. W.D. 2006); Capitol Indem. Corp. v. Callis, 963 S.W.2d 247, 249 (Mo. App. W.D. 1997); Acceptance Ins.

13

Co. v. Winning Concepts of Westport Inc., 842 S.W.2d 206, 208 (Mo. App. W.D. 1992); Trainwreck West Inc. v. Burlington Ins. Co., 235 S.W.3d 33, 44 (Mo. App. E.D. 2007).

Adams counters, arguing two grounds why the Assault and Battery Exclusion should not apply to defeat her claim. First, she argues the above cases are inapplicable because her negligence claim did not arise from an assault and/or battery. Second and alternatively, she argues that even if the claim did arise out of assault and battery, Missouri recognizes the concurrent proximate cause rule, which means that if an injury has two concurrent proximate causes, one which is covered and one which is excluded, the court will construe the policy to provide coverage. Adams argues that if an assault and battery did occur, and is excluded under the Policy, coverage should nonetheless be found because Galloway's and Lights on Broadway's negligence was a concurrent proximate cause of Willis's injury.

We begin by discussing Adams's assertion the Assault and Battery Exclusion should not apply because no assault or battery occurred. We note that in the cases offered by Underwriters to support its argument the Assault and Battery Exclusion applies, there was a determination made at some point in the litigation that an assault and battery had actually occurred. In Trainwreck West Inc., the court concluded the claim arose out of an assault and battery because the plaintiff had made a battery claim in the underlying tort action; the factual averments of the negligence claim also accused the bar's employees of assault. 235 S.W.3d at 44-45. In Hunt v. Capitol Indem. Corp., 26 S.W.3d 341 (Mo. App. E.D. 2000), the assailants who stabbed and killed the victim were "known dangerous, intoxicated patrons." 25 S.W.3d at 342. There was no dispute whether the act which resulted in the victim's death was an assault from the standpoint of the criminal third parties. The Bar, Inc. also involved facts that made it obvious from the allegations in the underlying petition that an assault had occurred – a determinable party (the

14

bouncer) had committed a violent act (an assault). 201 S.W.3d at 94. In Callis, the court found the assault and battery exclusion applied because the allegations in the petition were premised on the occurrence of an assault and battery, making any further factual determination unnecessary. 963 S.W.2d at 250.

In contrast, Adams points to Penn-Star Ins. Co. v. Griffey, 306 S.W.3d 591 (Mo. App. W.D. 2010). Griffey is similar to some of the above-cited cases in that a bouncer is alleged to have been negligent in removing a patron from the bar, causing injury. Id. at 595. However, the case is distinguished because the plaintiff's petition in the underlying tort case did not allege an assault or battery had occurred. Id. at 598. Rather, the plaintiff alleged a reasonable degree of force had been used to eject him under appropriate circumstances, but that force had been employed negligently. Like the instant case, the insurance policy covering the bar contained an assault and battery exclusion. However, that exclusion did not apply to "the use of reasonable force to protect persons or property," such as the degree of force a bouncer may employ when ejecting an unruly patron. Id. at 597. The court found it significant the plaintiff's petition did not allege the degree of force used to eject him was unreasonable, or constituted a battery. Id. at 598. Instead, the petition alleged the bouncer was negligent in ejecting the plaintiff in such a way his neck was compressed and his air supply cut off, and further negligent in failing to realize the plaintiff was unconscious before releasing him, causing him to strike his head. Id. The Griffey court concluded that because the petition did not allege assault and battery, and the insurance company did not assert knowledge of facts proving otherwise not contained in the petition when denying the claim, or at the trial for declaratory judgment, the assault and battery exclusion did not defeat their duty to provide defense to the insured. Id. The Griffey court

15

declined to take an approach that characterized every instance of an injury occurring as a result of the deliberate actions of another as an "assault and battery." Id. at 599.

In the instant case, it is important to note the record does not reveal definitively whether Willis was the victim of an assault or battery. The Petition itself contains no allegations Willis was assaulted or battered. Rather, it alleges Willis was shot when an unknown individual "recklessly fired stray bullets" into the crowd outside Pulse Night Club. While this leaves open the possibility Willis was the intended or unintended victim of an assault and/or battery, it does not prove it. Like the Griffey court, we are unwilling to conclude as a matter of law every gunshot wound must have resulted from an assault and battery. Here, as in Griffey, the Petition in the underlying case did not allege an assault and battery had occurred.

Comparing the allegations in the Petition to the coverage provided in the Policy, Underwriters fails in its burden to prove the claim by Adams is subject to the Assault and Battery Exclusion. Allen, 436 S.W.3d at 553. However, the analysis does not end here, because we must also consider what facts were known to Underwriters at the outset of the case, as well as what facts must have been readily apparent. Id. We note in Griffey, the court found it significant not only that the petition did not allege assault or battery, but the insurance company did not assert knowledge of facts on appeal or at trial that would tend to show otherwise. 306 S.W.3d at 598. This contrasts to the instant case. As discussed further *infra*, Underwriters claims on appeal the trial court erred by excluding the testimony of Davenport and the police detective who was on the scene after Willis's shooting. Underwriters asserts it sought to introduce this testimony to establish that Willis's injury was the result of an assault and battery, and thus they were correct in denying coverage for Adams's claim. If establishing whether an assault and battery occurred was dispositive of the issue of whether Underwriters can prove

16

coverage was impossible, it would indeed be error for the garnishment court to have excluded such evidence. However, the garnishment court did not rule for Adams because it found an assault and battery did not occur. Rather, it ruled for Adams because it found that, even had an assault and battery occurred, Galloway's and Lights on Broadway's negligence was a covered concurrent proximate cause of Willis's injury. Our analysis below shows this was correct.

**Concurrent Proximate Cause**

Although courts have varied somewhat on its precise formulation, Missouri recognizes the concurrent proximate cause rule when determining whether an exclusion provision in an insurance policy excludes coverage for an injury when that injury has two concurrent proximate causes, one covered by the policy and one excluded. If the included cause is truly independent and distinct from the excluded cause, then coverage will be found under the policy.

The concurrent proximate cause rule was first recognized in Missouri in Braxton v. U.S. Fire Ins. Co., 651 S.W.2d 616 (Mo. App. E.D. 1983). Braxton involved a plaintiff who was shot by an intoxicated gas station attendant. Id. at 617. The insurer sought to exclude coverage for the plaintiff's injury citing an exclusion in the policy barring coverage for injuries arising out of the ownership or use of a firearm. Id. at 618. The Braxton court held the policy did not exclude coverage for the plaintiff's injuries on two grounds. First, the court concluded that, taken as a whole, the policy was ambiguous as to whether, under the facts of the case, the plaintiff's claims were excluded. Id. at 619. Because such ambiguity existed, it would be construed against the insurer and coverage would be found. Id. The court also held that, even were the policy not ambiguous, coverage could also be found under the concurrent proximate cause rule. Id. at 619-20. The Braxton court went on to cite and recount the facts of several out-of-state cases and,

17

finding them persuasive, held the rule should also apply to find coverage for plaintiff's injuries. Id. at 620.

Since Braxton, Missouri courts have labored to articulate the precise formulation of the test to determine when the rule should apply. In Centermark Properties, Inc. v. Home Indem. Co., 897 S.W.2d 98 (Mo. App. E.D. 1995), the court again considered the doctrine, this time in the context of a claim by a police officer who was struck by a vehicle being operated by a third party. Id. at 99. The police officer alleged Centermark had negligently failed to secure and supervise the vehicle from being operated by unauthorized third parties. Id. The insurer sought to bar coverage for the claim under a provision excluding injuries arising out of the operation, use, loading or unloading of any automobile. Id. at 100. The court found coverage because "there [were] allegations of negligence that appear independent of ownership, maintenance, operation or use of an automobile – that is, that Centermark failed to comply with set procedure for apprehending, subduing and controlling third parties and persons suspected of criminal activity and it failed to have proper and adequate hiring practices and training policies and programs for its security officers." Id. at 101.

This approach of examining whether an underlying negligence action could state a claim without necessarily referencing the excluded cause was followed by courts in Bowan ex rel. Bowan v. General Sec. Indem. Co. of Arizona, 174 S.W.3d 1 (Mo. App. E.D. 2005), and Columbia Mut. Ins. Co. v. Neal, 992 S.W.2d 204 (Mo. App. E.D. 1999). The court in Hunt v. Capitol Indem. Corp., 26 S.W.3d 341 (Mo. App. E.D. 2000) took a substantially different approach to the rule. In facts somewhat similar to the instant case, a lounge owner was found negligent for failing to protect a victim from being stabbed by an intoxicated patron. Id. at 342.

The <u>Hunt</u> court found the concurrent proximate cause rule inapplicable to the assault and battery exclusion of the lounge owner's policy. The court explained:

> The holdings in *Braxton* and *Centermark Properties* are not persuasive under the facts presented here. In this case, the assault and battery is not incidental to plaintiffs' negligence claims. The damages arise from the assault and battery. Without the underlying assault and battery, there would have been no injury and therefore no basis for plaintiffs' action against Haverfield for negligence. The assault and battery and Haverfield's negligence are not mutually exclusive; rather the acts are related and interdependent. Haverfield's negligence, as found by the trial court, was not a separate and non-excluded cause apart from the assault and battery.

<u>Id.</u> at 345 (citations omitted).

The case of <u>Gateway Hotel Holdings, Inc. v. Lexington Ins. Co.</u>, 275 S.W.3d 268 (Mo. App. E.D. 2008) represents to that date the most thorough and well-analyzed attempt to resolve the several approaches to the concurrent proximate cause rule and its application in Missouri cases. Noting <u>Hunt</u> to be an outlier in its but-for causation approach to the rule, the court reviewed the decisions of <u>Braxton</u>, <u>Neal</u>, <u>Bowan</u>, and <u>Centermark</u>, finding them to provide the best guidance for applying the concurrent proximate cause rule. <u>Id.</u> at 282. The court stated:

> We agree with the *Bowan* court's analysis that, in order to permit coverage under the concurrent proximate cause rule notwithstanding the presence of an exclusion clause, the differing allegations of causation must be "independent and distinct." The alleged cause covered under the insurance policy must be independent and distinct from the alleged cause excluded under the policy. In determining whether one cause is "independent and distinct" from another, we find instructive our analysis and discussion in *Centermark,* which considered whether the covered cause and excluded cause depended upon each other to establish the necessary elements of each claim. *Centermark,* 897 S.W.2d at 103. If the essential elements of a negligence claim asserting a cause of injury can be stated without regard to the essential elements of a differing claim of negligence that also is asserted to have caused the same injury, then the separate causes are independent and distinct from the other, and support the application of the concurrent proximate cause rule.

<u>Id.</u>[3]

---

[3] The <u>Centermark</u> court went on to find the concurrent proximate cause rule did not apply, and the exclusionary clause of the policy in question barred coverage for the plaintiff's claim. The plaintiff had sought to hold a

Subsequently, the Missouri Supreme Court has recognized the concurrent proximate cause rule in Taylor v. Bar Plan Mutual Ins. Co., 457 S.W.3d 340 (Mo. banc 2015). Taylor cites to the Southern District case of Intermed Ins. Co. v. Hill, 367 S.W.3d 84 (Mo. App. S.D. 2012). In Intermed, the court found coverage where the plaintiff brought two separate claims against a healthcare provider and its employee, one for sexual assault and one for negligent supervision of the employee. Analyzing the elements of the two claims side by side, the Intermed court held that because neither claim required proof of any element of the other claim, both were truly independent and distinct, such that the insurance policy's provision excluding coverage for sexual assault did not bar recovery. Id. at 89. The Intermed court also rejected the but-for line of reasoning employed in Hunt. The Intermed court noted that, under the analysis of Hunt, because the excluded cause was a necessary cause of the injury, the concurrent proximate cause rule could not apply. Id. at 90. The court instead opted to apply the reasoning of the majority of Missouri cases like Neal, Bowen, Centermark, and Gateway, deciding that the ultimate injury suffered – a sexual assault – was merely incidental to the negligent supervision claim because of the range of harms foreseeable from negligent supervision, sexual assault was only one, and in itself was not a necessary element of the negligent supervision claim. Because the sexual assault claim was merely incidental to the covered claim of negligent supervision, the two causes of action were truly independent and distinct. Id. at 90-91.

---

landowner liable for a subcontractor's failure to provide adequate medical services during a boxing match. The plaintiff's petition alleged the landowner had a non-delegable duty to provide such services due to boxing being an inherently dangerous activity. The policy covering the landowner had a clause excluding coverage for injuries arising out of a boxing match. Because the theory of liability holding the landowner liable for the negligence of the subcontractor necessarily depended on the existence of boxing as an inherently dangerous activity, it could not be said the excluded cause, boxing, was independent and distinct from the negligence claim. Gateway, 275 S.W.3d at 282-84.

Surveying the cases on the concurrent proximate cause rule, we see no reason it cannot be applied in the instant case to analyze whether, if an assault and battery occurred, Adams's negligence claim could be covered under the Policy as an independent and distinct cause. Arguing against application of the rule, Underwriters points our attention to Green v. Penn-Am. Ins. Co., 242 S.W.3d 374 (Mo. App. W.D. 2007). In Green, the court refused to apply the concurrent proximate clause rule to find coverage under a policy with an assault and battery clause. The Green court rejected plaintiff's argument the concurrent proximate cause rule should apply because the terms of the insurance contract were not ambiguous. Id. at 383-84. This is a peculiar holding, because none of the above-cited Missouri cases discussing the concurrent proximate cause rule have required that the insurance policy be ambiguous before applying the rule.

For the proposition that ambiguity in the insurance policy is a condition precedent for application of the concurrent proximate cause rule, Green cites to Am. States Ins. Co. v. Porterfield, 844 S.W.2d 13 (Mo. App. W.D. 1992). In Porterfield, the plaintiff attempted to argue that a negligent supervision claim was a concurrent proximate cause of an injury that did not fall within an exclusion in the policy barring coverage for automobile-related injury, citing Braxton. Id. Without analysis, the Porterfield court declined to apply Braxton, stating "Braxton is distinguishable because the court found an ambiguity in the policy." Id. at 15. The Porterfield court is correct the Braxton court found the policy in question to be ambiguous. 651 S.W.2d at 618-19. But a cursory reading of Braxton clearly shows this finding was not the basis of its application of the concurrent proximate cause rule. Rather, the Braxton court affirmed the judgment of the trial court on two independent bases: one being ambiguity in the policy, which it construed against the insurer, and the other being the application of the concurrent proximate

21

cause rule.  Id.  Neither of these bases was dependent on the other for its existence.  We can think of no logical connection between ambiguity in an insurance policy and the concurrent proximate cause rule such that applying the rule must necessarily depend on finding ambiguity. To the extent Porterfield and Green misapplied the holding of Braxton to create a condition precedent of ambiguity before applying the concurrent proximate cause rule, we decline to follow those cases.

After surveying the above cases, we conclude that the concurrent proximate cause rule might apply to Adams's claim.  We now turn to the question of whether, assuming Willis's injury arose out of assault or battery, the negligence of Galloway and Lights on Broadway was a concurrent proximate cause of Willis's injury.  We determine it was.

In the underlying tort case, the trial court found for Adams on Count I of the petition alleging negligence against Galloway and Lights on Broadway, finding them jointly and severally liable for the death of Willis.  "In any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff."  Lopez v. Three Rivers Elec. Co-op., Inc., 26 S.W.3d 151, 155 (Mo. banc 2000), citing Krause v. U.S. Truck Co., Inc., 787 S.W.2d 708, 710 (Mo. banc 1990).  "Under the principle of general negligence law, whether a duty exists in a given situation depends upon whether the risk was foreseeable."  Id. at 156.  "The duty owed is generally measured by whether or not a reasonably prudent person would have anticipated danger and provided against it."  Krause, 787 S.W.2d at 710 (citations omitted).  Foreseeability of injury is important not only in determining whether the defendant had a duty to protect the plaintiff from harm, but also in determining whether the defendant's breach of duty was the proximate cause of the plaintiff's injury.  Lopez, 26 S.W.3d at 156.  "The

22

practical test of proximate cause is generally considered to be whether the negligence of the defendant is that cause or act of which the injury was the natural probable consequence." Krause, 787 S.W.2d at 710 (citation omitted). "Thus, from the essential meaning of proximate cause arises the principle that in order for an act to constitute the proximate cause of an injury, *some* injury, if not the precise one in question, must have been reasonably foreseeable." Id., quoting Dickerson v. St. Louis Public Service Co., 286 S.W.2d 820, 824 (Mo. banc 1956) (emphasis in original).

In examining the Petition, it is evident assault and battery is not alleged to have occurred, nor is it an essential element of the negligence claim. The Petition alleges many acts committed by Galloway and Lights on Broadway that might have conceivably exposed Willis to a wide range of foreseeable harms. These acts include inviting a large group of children to a parking lot, with no supervision, no security, and no police presence in a dangerous neighborhood at night, and then locking the doors of the nightclub when it was clear there was a disturbance that the children were attempting to escape. There are innumerable possible harms that could have foreseeably resulted from such negligent acts. For instance, it is foreseeable that Willis or another child could have been struck by a random bullet fired recklessly by an unknown individual, without any intent to assault or batter anyone, which is precisely what the Petition claims occurred. For the purpose of the negligence claim, the critical question is whether some harm was foreseeable, not the exact harm that ultimately occurred. Krause, 787 S.W.2d at 710.

On appeal, Underwriters argues the garnishment court erred by excluding evidence it offered to show Willis's gunshot injury was the result of an assault and battery. Underwriters correctly observes such evidence was not an attempt to relitigate facts necessarily determined in the underlying tort case, because no determination of whether Willis's injury was the result of an

23

assault and battery was essential to the judgment. However, they miss the point on how this ultimately affects their position. Assault and battery being unnecessary to the underlying judgment underscores that assault and battery, as the instrumentality of Willis's ultimate injury, is merely incidental to the negligence of Galloway and Lights on Broadway. See Neal, 992 S.W.2d at 209-10. Thus, following the above-discussed Missouri cases on the concurrent proximate cause rule, we conclude that, because assault and battery is only incidental to the negligence claim, and the negligence claim in no way relies on the occurrence of an assault and battery for its success, assault and battery and negligence are independent and distinct causes of Willis's injury, making the concurrent proximate cause rule applicable. This means Underwriters fails in its burden to prove there was no possibility of coverage for Willis's injury under the Assault and Battery Exclusion. Therefore, we affirm the garnishment court's conclusion Underwriters wrongfully denied a defense against Adams's tort claim.

Adams's Point VI – Classification Limitation

The garnishment court purported to rule against Adams's claim because the Classification Limitation barred her claim. However, a careful reading of the garnishment court's judgment and order reveals an insufficient basis to sustain the garnishment court's ruling. Accordingly, we reverse on Adams's Point VI.

**Interpretation of the Policy and Classification Limitation**

An insurance policy is a contract, and is generally subject to the same rules of interpretation that govern any contract dispute. Todd v. Mo. United School Ins. Council, 223 S.W.3d 156, 160 (Mo. banc 2007), quoting Peters v. Employers Mut. Cas. Co., 835 S.W.2d 300, 301-02 (Mo. banc 1993). We read the policy by giving the words in it their plain and ordinary meaning. Doe Run Resources Corp. v. Certain Underwriters at Lloyd's London, 400 S.W.3d

463, 474 (Mo. App. E.D. 2013). "We read insurance policies as a whole to determine the parties' intent, and give effect to this intent by enforcing the contract as written." Id. (citation omitted).

The garnishment court purported to bar Adams's claim based on its interpretation and application of the Classification Limitation. The Classification Limitation reads: "This insurance does not apply to 'bodily injury'…arising out of those operations or premises which are not classified or shown on the Commercial General Liability Coverage Part Declarations, its endorsements or supplements." As stated above, the Commercial General Liability Coverage Part Declarations lists Lights on Broadway's address as "8344-8350 North Broadway." Noting this, the garnishment court states: "The Classification Limitation in the…Policy bars coverage for the judgment entered in the [u]nderlying [a]ction against Lights on Broadway because the judgment is based on a shooting that occurred at Pulse Night Club on December 25, 2010 located at 8370 North Broadway."

Here we find the garnishment court has made two errors, one factual and one legal. Factually, the record shows the shooting did not occur at Pulse Night Club; it occurred outside of Pulse Night Club, in the parking lot shared by two other businesses, one of those being Lights on Broadway. The argument could be made it is correct to describe the shooting as having occurred "at" Pulse Night Club because it occurred in the parking lot outside. But in this context, such an interpretation would be self-defeating – to the extent the garnishment court sought to limit coverage by framing the shooting as happening "at" Pulse Night Club, it is every bit as correct to say it happened "at" Lights on Broadway, in that the shooting happened in the parking lot shared by both businesses.

But we do not resolve any semantic debate whether the shooting occurred "at" Pulse Night Club because the garnishment court made a legal error: The plain language of the Policy does not limit coverage only to injuries that occur at or on the covered premises. Rather, the policy states it "does not apply to 'bodily injury'…*arising out of* those operations or premises which are not classified or shown on the Commercial General Liability Coverage Part Declarations…" (emphasis added).

As stated above, "[t]he general rule in interpreting insurance contracts is to give the language of the policy its plain meaning." Allen v. Continental Western Ins. Co., 436 S.W.3d 548, 554 (Mo. banc 2014), citing Gavan v. Bituminous Cas. Corp., 242 S.W.3d 718, 720 (Mo. banc 2008). The term "arising out of" in an insurance policy is a "very broad, general and comprehensive term[]." Schmidt v. Utilities Ins. Co., 182 S.W.2d 181, 183 (Mo. 1944). Being broad, general, and comprehensive, nothing about that term facially limits coverage only to those injuries that occur on the insured premises.

The garnishment court did not consider whether Willis's injury "arose out of" the operations or premises classified or shown on the Commercial General Liability Coverage Declaration. It determined (arguably erroneously) the shooting occurred "at" Pulse Night Club, and thus was outside of the premises described in the Policy. The garnishment court did not consider that "arising out of" is broader language than "occurring at," and thus does not limit coverage only to those injuries that occur on or at the described premises.

In construing the scope of coverage under the Policy, we may refer to other provisions of the Policy to provide context. Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 77 (Mo. banc 1998). In doing so, we see the Policy clearly contemplates coverage for injuries that do not occur on the insured premises. For instance, the Policy contains coverage for Personal and

26

Advertising Injury. Advertising injury, as contemplated in commercial general liability insurance policies, generally refers to injuries caused in the course of publishing material related to the business which then gives rise to tort claims such as invasion of privacy or defamation. See Columbia Cas. Co. v. HIAR Holding, L.L.C., 411 S.W.3d 258, 269-70 (Mo. banc 2013). It would be absurd to claim the Classification Limitation of the Policy would limit the coverage only to those advertising injuries that occur entirely on the physical premises of the business. Similarly, the Policy contains coverage for premises rented to the insured, clearly demonstrating the Policy contemplates coverage for injuries that occur off the described premises of Lights on Broadway.

The garnishment court's judgment states Adams's claim was barred by the Classification Limitation because "[t]he underlying judgment was not entered against Lights on Broadway for liability based on its operations as a banquet hall or restaurant located at 8344-8350." In her brief, Adams points to another superficial error on the part of the garnishment court: the judgment refers to Lights on Broadway's operation as "a banquet hall," while the Policy classifies it, arguably more generally, as a "Hall." This error is superficial because the garnishment court made no findings whatsoever about whether Lights on Broadway's operations that night were those of a hall, banquet or otherwise. In short, the garnishment court did not analyze whether the terms of Classification Limitation bar coverage for the particular injury Willis received, but rather whether Galloway's actions were sufficient to expose Lights on Broadway to liability in the first place.

This distinction is further illuminated by the remainder of the garnishment court's judgment. It states:

> The proper entity to be sued in this case was Broadway Entertainment
> which, on its insurance application gave an address of 8370-8384 North

27

Broadway. Pulse Night Club was located at 8370 North Broadway. The nature of the business (description of operations) on the premises was night club and banquet hall. Pulse Night Club was operating as a night club…

Broadway Entertainment Ventures, LLC d/b/a St. Louis Nites Plaza Pulse was the proper entity to be sued in this case. It is clear that Galloway, at one time, had purchased a separate policy of liability insurance to provide coverage for that entity with Century Surety Company. This is further evidence that the business covered by the [] [P]olicy is separate and distinct from Broadway Entertainment Ventures, LLC and the Pulse Night Club which was the insured business under the Century Surety policy…

Notably absent from the garnishment court's judgment is any mention of the nature of Willis's injury, or an analysis of how the Classification Limitation excludes injuries like those that Willis suffered. Rather, the garnishment court focused on the description of the premises and operations described in the Policy to conclude Lights on Broadway was the incorrect entity to have been sued in the first place. Tellingly, the garnishment court repeatedly references a lapsed insurance policy Galloway had at one time purchased for Broadway Entertainment Ventures. As suggestive as this fact may be, an unrelated lapsed insurance policy has no legal relevance when evaluating whether a different insurance policy covers a particular injury.

In this Court's view, although the garnishment court purported to conclude Adams's claim was barred under the Classification Limitation, its analysis of the Policy as it applies to Adams's claim was insufficient to support its ruling. A careful reading of the judgment reveals an entirely different basis for the garnishment court's denial of Adams's claim: the garnishment court concluded that Galloway was promoting the party that night as the agent of a different business. The garnishment court stated as much in the judgment when it wrote, "There is no evidence that Galloway was performing the duties of an 'executive officer' of Lights on Broadway in connection with the party at Pulse Night Club.... Rather, Galloway was acting as an event promotor through his business EGE Productions on the night of the shootings." Based

28

on this, the garnishment court concluded that Lights on Broadway was not liable for Willis's injury, and thus no payment was due under the Policy that insured Lights on Broadway.

The question then is whether the garnishment court was at liberty to decide Galloway was acting on behalf of another business, such that Lights on Broadway could not be liable for his negligence and no payment was due under the policy. We conclude it was not.

**Duty to Defend and Preclusive Effect of Underlying Tort Claim**

As discussed above, we affirm the trial court's ruling that Underwriters breached its duty to defend Lights on Broadway from Adams's negligence claim. However, we must note that, despite reaching the correct result in determining Underwriters owed Lights on Broadway a duty to defend it from the underlying tort claim, the trial court committed error when it determined there remained a question as to whether the policy covered the liabilities incurred by Galloway and Lights on Broadway in the underlying tort claim. Underwriters failed to furnish a defense to the named insured under the Policy in the underlying tort case, and as a result Underwriters is bound by any issue or question necessarily determined in the underlying action.

As stated above, the garnishment court found, and we affirm, that Underwriters had the opportunity to control the underlying litigation but chose not to when it wrongfully refused to defend Lights on Broadway from Adams's negligence suit. "Where one is bound to protect another from liability, he is bound *by the result of the litigation* to which such other is a party, provided he had ... opportunity to control and manage it." Allen v. Bryers, 512 S.W.3d 17, 32-33 (Mo. banc 2016), quoting Drennen v. Wren, 416 S.W.2d 229, 234 (Mo. App. Spring. Dist. 1967) (emphasis in original). Under these circumstances, the judgment underlying the garnishment action "is conclusive in a later action on the indemnity contract as to those issues and questions necessarily determined in the underlying judgment." Assurance Co. of Am. v. Secura Ins. Co.,

29

384 S.W.3d 224, 233 (Mo. App. E.D. 2012). "Where the insurer had the opportunity to defend the insured but wrongfully refused to do so, the insurer is precluded from relitigating any facts that were determined in the underlying case and were necessary to the judgment." Id. (citation and internal quotation marks omitted). "The facts decided in the underlying action most often will determine whether there is a duty to indemnify." Id.

The garnishment court concluded Galloway was not acting on behalf of Lights on Broadway on the night of Willis's shooting, and thus Galloway was not a named insured under the policy. In the underlying case, however, both Galloway and Lights on Broadway were adjudged to be jointly and severally liable for Willis's death due to negligence. Lights on Broadway is unambiguously a named insured under the Policy. As we have already discussed, nothing in the Policy excludes coverage for a claim of negligence against Lights on Broadway like the claim Adams brought. With this in mind, we hold the garnishment court was not at liberty to determine Lights on Broadway was not liable for Willis's death, because that is contrary to what the trial court necessarily determined in the underlying case.

The trial court in the underlying case did not accompany its judgment with findings of fact or conclusions of law. However, given the record, there is no conceivable way the trial court could have found Lights on Broadway liable under a theory of negligence for Willis's death if it had not necessarily determined Galloway was acting on its behalf the night of the shooting. It is axiomatic that a corporation "can only act by agents, and [] is responsible for the acts of its agents when done in the exercise of its agency." Eichelberger v. Barnes Hosp., 655 S.W.2d 699, 706 (Mo. App. E.D. 1983), citing Globe Indemnity Co. v. First Nat'l Bank in St. Louis, 133 S.W.2d 1066, 1071 (Mo. App. St.L. Dist. 1939). If Galloway had not been promoting a party on behalf of Lights on Broadway that night, Lights on Broadway could not have been found liable

30

for Willis's death. This factual finding was implicitly necessary to the underlying judgment. Because Underwriters wrongfully refused to defend the named insured under the Policy, the garnishment court was bound by those findings that were necessary to the underlying judgment. Thus, the garnishment court erred by concluding Lights on Broadway could not be liable for Willis's death through the actions of Galloway.

An insurer who refuses to defend a named insured does so at its peril. That insurer gives up the right to control the litigation, and if it is later found it refused wrongfully, it will be bound by all those issues and questions necessarily determined in the underlying case. Bryers, 512 S.W.3d at 33. In such circumstances, the insured is free to enter into an agreement with the claimant under Section 537.065 in order to limit his liability. Id. at 32. If Underwriters wished to litigate whether Galloway was acting on behalf of Lights on Broadway when promoting the party the night Willis was shot, it was obligated to do so in the underlying case, before there was a final judgment against Lights on Broadway for negligently causing Willis's death. Having abandoned their opportunity to do so, they are bound by the resulting judgment.

**Breach and Remedy**

We affirm the garnishment court's judgment finding Underwriters had a duty to defend Lights on Broadway, the named insured under the Policy, from Adams's negligence suit. We reverse the garnishment court's judgment finding no payment was due to Adams under the Policy because the garnishment court erroneously found Lights on Broadway not to be liable for Willis's death, contrary to a finding necessarily reached in the underlying tort case. What remains is to determine the remedy.

Underwriters' failure to defend constitutes a breach of contract. Landie v. Century Indem. Co., 390 S.W.2d 558, 562 (Mo. App. K.C. Dist. 1965). On the matter of damages, we

31

find Allen v. Bryers to be controlling. The Bryers court explained what liability is incurred by an insurance company that wrongfully refuses to defend an insured, stating, "[A]n insurance company is liable to the limits of its policy plus attorney fees, expenses and other damages where it refuses to defend an insured who is in fact covered." Bryers, 512 S.W.3d at 38, quoting Landie, 390 S.W.2d at 562.

In the instant case, Adams was already awarded the attorney's fees and expenses incurred by Galloway and Lights on Broadway defending the underlying suit, as per the assignment of claims under the Section 537.065 agreement. What remains is to determine the rest of the amount due to Adams under the Policy. Although the underlying judgment against Galloway and Lights on Broadway was for $5,000,000, the Policy limits coverage for personal injury to $1,000,000. Therefore, pursuant to Bryers, Underwriters remains liable to Adams for the $1,000,000 limit under the Policy.

## Underwriters' Point IX – Bad Faith Failure to Defend

Underwriters appeals from the garnishment court granting partial summary judgment on Adams's claim against it for bad faith failure to defend. We reverse.

Bad faith failure to defend is "the intentional disregard of the financial interest of [the] insured in the hope of escaping the responsibility imposed upon [the insurer] by its policy." Bryers, 512 S.W.3d at 39, quoting Zumwalt v. Utilites Ins. Co., 228 S.W.2d 750, 754 (Mo. 1950). Examples include failing to investigate third-party claims, ignoring the possibility of a verdict exceeding the policy limits when refusing to settle, or failing to keep the insured informed of all possible risks involved when deciding whether to settle or take the claim to trial. Id. "Whether an insurer acted in bad faith is generally a fact question for the jury." Id. "Liability cannot be predicated upon negligence, but, rather, there must be a showing of a lack of

32

good faith." Id. If successful, a claim of bad faith refusal to defend would mean Underwriters is liable not just for the $1,000,000 policy limit, but for the entire $5,000,000 judgment. Bryers, 512 S.W.3d at 39; see also Shobe v. Kelly, 279 S.W.3d 203, 208-09 (Mo. App. W.D. 2009).

Underwriters points out that in granting summary judgment against them on the bad faith failure to defend claim, the garnishment court did not find Underwriters had acted in bad faith, or analyze whether the undisputed facts established bad faith. Rather, the garnishment court only analyzed whether a duty to defend existed, and not whether Underwriters denied defense in bad faith. Adams argues the undisputed facts support the garnishment court's granting summary judgment. On review of the record, we cannot say the undisputed facts conclusively established Underwriters acted in bad faith when refusing to defend Galloway and Lights on Broadway. Therefore, we reverse the garnishment court's granting summary judgment on bad faith failure to defend, and remand for further proceedings.

### Underwriters' Point X – Not Admitting Evidence of Assault and Battery

In its final point on appeal, Underwriters claims the garnishment court erred by excluding evidence Willis was shot as a result of an assault and battery. As discussed more fully above, it is immaterial whether Willis's injury was the result of an assault and battery because we hold that, even if it were, the concurrent proximate cause rule is applicable and the injury is still covered under the Policy. Point X is denied.

### Galloway's and Lights on Broadway's Point on Appeal – Dismissal of Defamation Claim

In the final point on appeal of this case, we address Galloway's and Lights on Broadway's claim the garnishment court erred by dismissing their claim against Underwriters for defamation for accusing them of fraud in the pleadings. We affirm.

33

**Standard of Review**

We review the garnishment court's dismissal of a claim to determine whether the "facts pleaded and inferences reasonably drawn therefrom state any ground for relief." Riley v. Riley, 340 S.W.3d 334, 337 (Mo. App. W.D. 2011), quoting Sterling v. Rust Commc'ns, 113 S.W.3d 279, 281 (Mo. App. E.D. 2003). "We deem alleged facts to be true and construe them liberally and favorably to the plaintiff." Id.

**Discussion**

In the pleadings raising an affirmative defense against Adams's claim, Underwriters alleged Galloway, Lights on Broadway, and Adams had entered into the Section 537.065 agreement fraudulently, that Galloway had testified falsely at the underlying trial, and he had done so to perpetrate fraud on both the court and insurance company.

"Defamatory statements made during judicial proceedings pertinent to the proceedings are absolutely privileged, even if made maliciously." Riley, 340 S.W.3d at 338 (citation omitted). "Statements that are absolutely privileged are not actionable as a matter of law." Id. "Whether statements are pertinent to the judicial proceeding is a question of law." Id.

The garnishment court found the accusations of fraud in Underwriters' pleadings to be pertinent to the proceedings and thus absolutely privileged, citing Taggart v. Maryland Cas. Co., 242 S.W.3d 755 (Mo. App. W.D. 2008). In Taggart, the court held that an insurer could raise as an affirmative defense that the Section 537.065 agreement between the insured and a third party was the result of fraud and collusion. Had the garnishment court found that Galloway falsified his testimony in the underlying tort case in order to defraud the court and the insurance company, such finding would have successfully defeated Adams's claim. Thus, the allegations in

34

Underwriters' pleadings were pertinent, and subject to an absolute privilege. Galloway's and Lights on Broadway's point on appeal is denied.

Conclusion

The judgment of the garnishment court is affirmed in part and reversed in part. We affirm the garnishment court's finding Underwriters breached its duty to defend Galloway and Lights on Broadway in the underlying tort case. We reverse the garnishment court's determination the claim was barred by the Classification Limitation in the Policy, and hold Willis's injury was covered by the Policy. We also reverse the garnishment court's granting summary judgment on Adams's claim of bad faith failure to defend. We remand the case to the garnishment court for resolution of all claims and issues that remain unresolved by this appeal.


_____

SHERRI B. SULLIVAN, P.J.

Lawrence E. Mooney, J., and
Colleen Dolan, J., concur.